## UNITED STATES v. DOLLA.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1910.)

### No. 2,007.

COURTS (§ 405*)—JURISDICTION OF CIRCUIT COURT OF APPEALS—PROCEEDING FOR NATURALIZATION—REVIEW—"CASE."

 A proceeding for naturalization under Act June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1909, p. 477), is not a "case" within the meaning of Act March 3, 1891, c. 517, § 6, 26 Stat. 828 (U. S. Comp. St. 1901, p. 549), which provides that Circuit Courts of Appeals "shall exercise appellate jurisdiction to review by appeal or by writ of error final decision in the District Court and the existing Circuit Courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law," and there being no provision for direct review in the naturalization act a Circuit Court of Appeals is without jurisdiction to review the decision of a District or Circuit Court in such a proceeding. Moreover, the admission of an alien to citizenship is a political, and not a judicial, act, and, having been vested by Congress in the courts to be exercised on proof "to the satisfaction of the court," its exercise is discretionary, and not reviewable.

 [Ed. Note.—For other cases, see Courts, Dec. Dig. § 405.*

 For other definitions, see Words and Phrases, vol. 1, pp. 985–994; vol. 8, p. 7597.]

In Error to the District Court of the United States for the Southern District of Georgia.

Petition for naturalization by Abba Dolla. From an order admitting petitioner to citizenship, the United States brings error. Writ of error dismissed.

Alexander Akerman, for the United States.

Robt. M. Hitch and Remer L. Denmark, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

PARDEE, Circuit Judge. The record shows that Abba Dolla presented his petition in due form for naturalization under the act of Congress providing for a uniform rule for the naturalization of aliens, approved June 29, 1906 (Act June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 477]), that upon the hearing of this petition and in opposition thereto the United States appeared through Alexander Ackerman, Esq., Assistant United States Attorney, and urged an objection upon the ground that the said Abba Dolla was a native of India, and was not of those classes of aliens who are per-

mitted to be naturalized under the laws of the United States. The court heard the petitioner and the evidence produced by him, and "being of opinion that the said applicant was a white person, within the meaning of the said naturalization laws, and was entitled to become naturalized as a citizen of the United States," made an order formally admitting said Abba Dolla as a citizen of the United States, to which ruling of the court the United States Attorney in behalf of the United States excepted and thereafter sued out this writ of error.

The bill of exception shows:

"Upon the said hearing, by the sworn testimony of the said Abba Dolla, and his said two witnesses, it was shown to the satisfaction of the court that the said Abba Dolla was in all respects qualified to become naturalized as a citizen of the United States, the only question at issue being as to whether or not he was a white person within the meaning of naturalization laws. It appeared that the said Abba Dolla was born and reared in Calcutta, India. His father and mother were natives of Afghanistan. Prior to the applicant's birth they removed to Calcutta from Kabul, the capital of Afghanistan. The applicant's complexion is dark, eyes dark, features regular and rather delicate, hair very black, wavy and very fine and soft. On being called on to pull up the sleeves of his coat and shirt, the skin of his arm where it had been protected from the sun and weather by his clothing was found to be several shades lighter than that of his face and hands, and was sufficiently transparent for the blue color of the veins to show very clearly. He was about medium or a little below medium in physical size, and his bones and limbs appeared to be rather small and delicate. Before determining that the applicant was entitled to naturalization the presiding judge closely scrutinized his appearance and himself propounded the questions relating to the various requirements of the naturalization statutes, giving the applicant a rigid and detailed examination. The applicant testified that he came to New York from Calcutta about June 15, 1894, on the steamship Gonconda, and that on the same boat a fellow countryman of his, named Abdul Hamid, came to this country, and that Abdul Hamid was granted naturalization papers in the United States District Court at New Orleans on March 20, 1908, the naturalization certificate of Abdul Hamid being produced and submitted to the presiding judge in confirmation of this statement. The applicant has been living in Savannah, Ga., about 12 years. He is a regular importer of silks, linens, and other goods from India, through the Savannah custom house, and acts as a kind of jobber or wholesaler in this line of business, other countrymen of his taking the goods and selling them at retail from house to house in the surrounding country as well as in the city of Savannah. The applicant seemed to be generally and very favorably known by quite a number of reputable people in Savannah, several of whom he offered to produce in court to testify as to his character, integrity, habits, etc., though the court did not require their testimony. Among those whom he offered to produce for this purpose was the deputy collector of the port at Savannah, certain merchants of the city, one of the attachés of the United States court and one of the leading white physicians of the city, Dr. E. R. Corson, who had attended him at the various times in the past several years and who had at one time performed an operation on him for appendicitis. Dr. Corson was present in the court at the hearing, and was ready to swear that in his judgment the applicant was of pure Caucasian blood. The applicant seemed to have no particular affiliations of social nature with any except those of his own nationality—he and several of his countrymen living together in Savannah. His trade was among whites and blacks indifferently. The two witnesses to his application were colored men. He was shown, however, to be the owner of a cemetery lot in the "white cemetery" at Savannah, which is owned and controlled by the city of Savannah, and which cemetery lots are sold by the city of Savannah to white persons only, and in which white persons only are buried, other cemeteries being provided for colored people."

The errors assigned are, (1) The court erred in admitting the said Abba Dolla as a citizen of the United States over the objection of the said United States. (2) The court erred in holding that under the evidence the said Abba Dolla was a white person within the meaning of the naturalization laws of the United States. (3) The court erred in overruling the objection of the United States to the said petition. (4) The court erred in not making an order, under the evidence in the case, refusing to admit the said Abba Dolla to citizenship.

The defendant in error denies our jurisdiction. The naturalization laws, while they provide "the United States shall have the right to appear before any court exercising jurisdiction in naturalization proceedings for the purpose of cross-examining the petitioner and shall have the right to call witnesses to produce evidence and be heard in opposition to the granting of any petition in naturalization proceedings," do not provide for, or apparently contemplate, any appeal, by writ of error or otherwise, to any revisory court, and therefore if this court has any jurisdiction on this writ of error, it must be found in the fifth and sixth sections of the Circuit Courts of Appeals Act, passed in 1891 (Act March 3, 1891, c. 517, 26 Stat. 827, 828 [U. S. Comp. St. 1901, p. 549]), the fifth section of which provides for appeals or writs of error from the District and existing Circuit Courts to the Supreme Court in certain enumerated cases; and in section 6 provides that the Circuit Courts of Appeals established by this act shall exercise appellate jurisdiction to review by appeal or writ of error final decisions in the District Courts and existing Circuit Courts in all cases other than those provided for in the fifth section unless otherwise provided by law.

The question before us, then, is whether an application for naturalization under the laws of the United States which may be presented to any District or Circuit Court or to any court of record in any state or territory having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity in which the amount in controversy is unlimited, is a case within the meaning of the sixth section of our jurisdictional act.

Bouvier defines a case to be "a contested question before a court of justice; a suit or action; a cause."

Burrell defines a case to be "a suit or action, a cause; the Latin casus had formerly the same meaning." He also says: "A case, in the sense of the Constitution of the United States (article 3, § 2), is a suit in law or equity instituted according to the regular course of judicial proceedings."

"A 'case' is a contested question before a court of justice; a suit or action; a cause; a state of facts involving a question for discussion or decision, especially a cause or suit in court. The term 'case' has been frequently held synonymous with the terms 'cause,' 'action' and 'suit,' but distinctions have been drawn between 'cause' and 'case.'" Ency. L. & P. vol. 5, p. 748 et seq.

"The word 'cases,' three times used in this section (section 2, art. 3, Const. U. S.), must be understood in its legal and technical sense as meaning contested questions before courts of the United States, suits,

or actions." Home Ins. Co. v. Northwest Packet Co., 32 Iowa, 236, 7 Am. Rep. 183.

"A 'case' is a state of facts which furnishes occasion for the exercise of the jurisdiction of a court of the United States; to the existence of such a case parties are necessary, also pleadings and proceedings, trials, orders, judgments, etc., should follow." Calderwood v. Peyser, 42 Cal. 115.

" 'Case' is defined to be a question contested before a court of justice, an action or suit in law or equity (Martin v. Hunter's Lessee, 1 Wheat. 352 [4 L. Ed. 97] ; Osborn v. U. S. Bank, 9 Wheat. 819 [6 L. Ed. 204]. A suit is defined to be a prosecution of some demand in a court of justice (Cohens v. Virginia, 6 Wheat. 407, 5 L. Ed. 257 ; Wayman v. Southard, 10 Wheat. 30 [6 L. Ed. 253])." Ex parte Towles, 48 Tex. 433.

"The words 'case' and 'cause' are constantly used as synonymous in statutes and judicial decisions, each meaning a proceeding in court, a suit or action. Surely no court can have jurisdiction of either a case or a cause until it is presented in the form of an action." Blyew v. United States, 13 Wall. 591, 595, 20 L. Ed. 638.

Under the naturalization law of June 29, 1906, the jurisdiction is conferred upon the courts, the petition for naturalization is to be filed addressed to the court, notice is to be given by posting, witnesses may be summoned, the United States are given the right to appear and oppose and call witnesses, every final hearing shall be had in open court before a judge or judges, and final orders are to be under the hand of the court and entered of record. Under the first naturalization act (Act March 26, 1790, c. 3, 1 Stat. 103), jurisdiction was conferred upon state courts only, but since 1802 it has been extended to District and Circuit Courts of the United States. Naturalization has always been an act or judgment of a court, but never until the act of 1906 has it been suggested that the special proceedings authorized constituted a case, action, or cause that could be reviewed on writ of error under any judiciary act, state or federal. If, by the additional provisions and restrictions with which naturalization is guarded by the act of 1906, an application for naturalization is made a case within the meaning of section 6 of the Courts of Appeals Act of 1891, then it must follow that all applications for naturalization in all courts, state and federal, are reviewable by appeal or writ of error, as the several judiciary acts may read, at the suit of the rejected applicant or the United States.

We may say, further, if naturalization proceedings under the act of 1906 constitute a "case" it is a case at law, not in equity nor in admiralty; and if such a case is reviewable under present laws it can only be on writ of error, and only errors of law appearing of record can be reviewed. It is unnecessary to point out that such review would be fruitless in all cases where the forms provided by the law are followed. Any review of naturalization proceedings in an appellate court, to be worth while, must be a review of the facts as well as law, and this can only be on appeal, and an appeal must be provided by statute. As the act of 1906 is silent with regard to any appeal or writ of error,

while sedulous in placing guards and restrictions around the proceedings and fully protecting the United States by authorizing a suit to annul any certificate fraudulently obtained or improperly granted, it is not to be supposed that it was the intention of the said act to make a reviewable case of every application for naturalization. The mischief to be remedied was not in that line, but was the hasty and improvident way in which many of the courts under the prior laws naturalized aliens without examination and proper proof. Naturalization of aliens is an act of grace, not right, and it is not necessarily a business of the courts. It is lodged in the courts for convenience, and, at the pleasure of Congress, can be taken entirely away and lodged in the Bureau of Commerce and Labor, which is now charged with supervision of the operations under the act, or with any executive officer, as is now lodged the right and power to determine whether certain aliens shall be permitted to come into the country at all. See Lee Lung v. Patterson, 186 U. S. 168, 22 Sup. Ct. 795, 46 L. Ed. 1108. If naturalization is a judicial act it is because done by judges.

We therefore conclude that the action and proceedings of the District Court on Abba Dolla's petition for naturalization did not constitute a "case" within the meaning of the sixth section of the judiciary act of 1891, and this court is without jurisdiction to review the same.

The same conclusion may be reached on another line. The admission of an alien to citizenship is not only a political act of grace, but the power vested in the court to grant or order the same is on proof to the satisfaction of the court, with the petitioner and witness as necessary exhibits—that is to say, the question of admission is committed to the discretion of the courts—and discretionary rulings of courts are not reviewable on error or appeal, except, perhaps, when the discretion is shown to have been abused, and abuse of discretion in naturalization cases is provided for in section 15 of the act of 1906, not by error or appeal, but by a direct suit to annul and cancel.

A writ of error to revise discretionary rulings should be dismissed. See McTague v. P. & N. E. R. R. Co., 44 N. J. Law, 61, 62.

The writ of error is dismissed.