## UNITED STATES v. NOPOULOS.

(District Court, S. D. Iowa, Davenport Division. September 15, 1915.)

1. ALIENS ⬥71½, New, vol. 7 Key-No. Series—NATURALIZATION—VACATION —JURISDICTION OF COURT.

Under Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (Comp. St. 1913, § 4374), declaring that it shall be the duty of the United States district attorneys, upon affidavits showing good cause, to institute proceedings, in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or illegality, the federal District Court has jurisdiction of a proceeding to set aside a certificate of citizenship issued by a state court, even if the right of appeal exists, which is negatived.

2. ALIENS ⬥71½, New, vol. 7 Key-No. Series—NATURALIZATION—PROCEEDINGS TO SET ASIDE.

On petition to the District Court to set aside a certificate of citizenship issued by a state court, there is a presumption that the findings of fact by the lower court were correct, which presumption is not conclusive, but any errors of law will be reviewed.

3. ALIENS ⬥68—NATURALIZATION—RIGHT TO.

Under Act June 25, 1910, c. 401, § 3, 36 Stat. 830 (Comp. St. 1913, § 4352), declaring that any person belonging to the class of persons authorized and qualified to become a citizen of the United States, who has resided constantly therein for five years next preceding May 1, 1910, who, because of misinformation in regard to his citizenship or the requirements of the law concerning naturalization, has labored under the impression that he

was or could become a citizen in good faith, and has exercised the right of a citizen or intended citizen, may, upon making a showing of such facts satisfactory to a court having jurisdiction to issue papers of naturalization, be granted a final certificate of naturalization, a subject of a foreign sovereign, who entered the United States in 1895, but did not understand that declaration of an intention to become a citizen was necessary, is not entitled to naturalization under the act, which applies only to special cases, as where a child in good faith believes his father was naturalized, and such alien's rights are not enlarged because he was advised by counsel that he was entitled to naturalization under the act.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. &c⇒68.]

4. ALIENS &c⇒71½, New, vol. 7 Key-No. Series—NATURALIZATION—ESTOPPEL.
     That the Bureau of Naturalization was represented in the state court when defendant was granted citizenship does not estop the government from having the certificate of naturalization canceled; it not being authorized under the law.

Petition by the United States against John Nopoulos to set aside the order admitting him to citizenship. Order vacated.

Claude R. Porter, of Centerville, Iowa, for the United States.
M. V. Gannon, of Davenport, Iowa, for defendant.

WADE, District Judge. On November 15, 1911, John Nopoulos, a subject of the king of Greece, was admitted to citizenship by the district court of Scott county, Iowa. On September 7, 1912, a petition was filed by the district attorney to set aside the order admitting him to citizenship, upon the claim that said order was procured by fraud and illegality, that he had not prior thereto declared his intention to become a citizen of the United States, and for other reasons.

Defendant admits that he never filed any prior intention to become a citizen of the United States, but claims that he never made application or declaration of intention, because of misinformation in regard to citizenship, or the requirements of the law concerning the naturalization of citizens, and has labored and acted under the impression that he was or could become a citizen of the United States, and has in good faith exercised the rights and duties of a citizen or intended citizen of the United States, because of such wrongful information, and for this reason he claims that he was entitled to citizenship by reason of the provisions of section 3 of the act of Congress approved June 25, 1910. He also pleads as defenses that the court has no jurisdiction, that the proper remedy is by appeal, and that no appeal was taken. He also relies upon an estoppel, because he alleges that the application for citizenship was heard before a court of competent jurisdiction, in the presence of representatives of the government, who examined witnesses, and were heard by the court in opposition to the order made.

[1] The first question to be determined is whether or not this court has jurisdiction. It is contended by defendant that the sole remedy is by appeal. Section 15 of the Act of June 29, 1906, is as follows:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute

proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate * * * was illegally procured. In any such proceeding the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States. * * * "

Speaking of this section, Mr. Justice Pitney, in the case of Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066, said:

"Whether the judicial review of a certificate of naturalization should be conducted in one mode or another is a matter plainly resting in legislative discretion. Section 15 of the act of June 29, 1906 (34 Stat. 601), provides for a proceeding in a 'court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit,' upon fair notice to the party holding the certificate of citizenship that is under attack. No criticism is made of this mode of procedure."

In the case of Luria v. United States, 231 U. S. 24, 34 Sup. Ct. 10, 58 L. Ed. 101, Mr. Justice Van Devanter, speaking for the court, says:

" * * * The section makes no discrimination between the rights of naturalized and native citizens, and does not in any wise affect or disturb rights acquired through lawful naturalization, but only provides for the orderly cancellation, after full notice and hearing, of certificates of naturalization which have been procured fraudulently or illegally. It does not make any act fraudulent or illegal that was honest and legal when done, imposes no penalties, and at most provides for the annulment, by appropriate judicial proceedings, of merely colorable letters of citizenship, to which their possessors never were lawfully entitled. Johannessen v. United States, 225 U. S. 227 [32 Sup. Ct. 613, 56 L. Ed. 1066]. See, also, Wallace v. Adams, 204 U. S. 415 [27 Sup. Ct. 363, 51 L. Ed. 547]."

In United States v. Dolla, 177 Fed. 104, 100 C. C. A. 521, 21 Ann. Cas. 665, the court says:

"As the act of 1906 is silent with regard to any appeal or writ of error, while sedulous in placing guards and restrictions around the proceedings and fully protecting the United States by authorizing a suit to annul any certificate fraudulently obtained or improperly granted, it is not to be supposed that it was the intention of the said act to make a reviewable case of every application for naturalization. The mischief to be remedied was not in that line, but was the hasty and improvident way in which many of the courts under the prior laws naturalized aliens without examination and proper proof. Naturalization of aliens is an act of grace, not right, and it is not necessarily a business of the courts. It is lodged in the courts for convenience, and, at the pleasure of Congress, can be taken entirely away and lodged in the Bureau of Commerce and Labor, which is now charged with the supervision of the operations under the act, or with any executive officer, as is now lodged the right and power to determine whether certain aliens shall be permitted to come into the country at all. See Lee Lung v. Patterson, 186 U. S. 168, 22 Sup. Ct. 795, 46 L. Ed. 1108. If naturalization is a judicial act, it is because done by judges. We therefore conclude that the action and proceedings of the District Court on Abba Dolla's petition for naturalization did not constitute a 'case' within the meaning of the sixth section of the Judiciary Act of 1891, and this court is without jurisdiction to review the same.

"The same conclusion may be reached on another line. The admission of an alien to citizenship is not only a political act of grace, but the power vested

in the court to grant or order the same is on proof to the satisfaction of the court, with the petitioner and witness as necessary exhibits; that is to say, the question of admission is committed to the discretion of the courts, and discretionary rulings of courts are not reviewable on error or appeal, except, perhaps, when the discretion is shown to have been abused, and abuse of discretion in naturalization cases is provided for in section 15 of the act of 1906, not by error or appeal, but by a direct suit to annul and cancel."

The foregoing case is followed by the Circuit Court of Appeals for the Third Circuit in United States v. Neugebauer, 221 Fed. 938, —— C. C. A. ——. See, also, State v. Court, 75 Wash. 239, 134 Pac. 916; United States v. Kolodner, 204 Fed. 240, 124 C. C. A. 1; United States v. Cantini, 212 Fed. 925, 129 C. C. A. 445; United States v. Nisbet (D. C.) 168 Fed. 1005.

In United States v. Simon (C. C.) 170 Fed. 682, it is said:

"The respondent contends that this court is without jurisdiction to vacate an order or decree of naturalization granted by another court which had jurisdiction of the subject-matter. But the language of the statute explicitly contradicts this contention. The act gives jurisdiction to cancel the naturalization certificate, not to the court which granted it, but to any court of naturalization in the district of the residence of the naturalized person."

From the language of the act, and the foregoing cases, it cannot be questioned that this court has jurisdiction to entertain this application, regardless of the question as to whether an appeal from the original order would lie or not. So that, even if it were conceded that the government had the right to appeal from an order admitting an alien to citizenship, such appeal, under the language of the act, is not exclusive.

There are cases holding that the right of appeal does exist; but, if it were necessary to decide this question, I should have to hold that the right of appeal does not exist. This court, therefore, has jurisdiction to determine the issues in this case.

[2, 3] The petition filed in this action alleges both "fraud" and "illegality." It is not necessary to determine whether there was actual fraud or not; it is sufficient if the facts show that the applicant was not at the time entitled to citizenship. Of course, in a proceeding of this kind, this court, upon all questions of fact, would indulge in the presumption that the findings of the lower court were correct; but in this case there is no dispute in the facts. It appears conclusively that the defendant was not entitled to naturalization.

That it is the duty of this court to review an error of law by the lower court is clearly established by a number of cases. In United States v. Meyer (D. C.) 170 Fed. 985, it is said:

"Jurisdiction is expressly conferred by section 15 of the act of 1906 to entertain a suit to cancel and set aside a certificate of citizenship procured through fraud or illegality. The superior court of Benton county acted upon the theory that as a matter of law the widow was entitled to admission as a citizen without declaring her intention. But clearly this was an erroneous construction. There was no authority of law for such procedure. It was void for want of it. The court exceeded its jurisdiction, and, having done so, this court, by virtue of the act of Congress, is empowered to cancel the certificate for illegality."

In United States v. Plaistow, 189 Fed. 1010, the court says:

"The term 'illegally procured' is not limited to irregularity, * * * but also denotes the determination by the court contrary to law of the matter submitted to it." Tiedt v. Carstensen, 61 Iowa, 334, 16 N. W. 214.

To the same effect, see United States v. Schurr (D. C.) 163 Fed. 648; United States v. Wayer (D. C.) 163 Fed. 650; United States v. Van Der Molen (D. C.) 163 Fed. 650; United States v. Johnson (C. C.) 181 Fed. 429; United States v. Cantini (D. C.) 199 Fed. 857; Mansour v. United States, 226 U. S. 604, 33 Sup. Ct. 217, 57 L. Ed. 378.

In this action the defendant was born in Greece in 1874. He came to the United States about March, 1895, and has continued to reside here ever since. On August 14, 1911, he filed his petition for naturalization. He never filed any previous declaration of intention to become a citizen. He was admitted to citizenship, because the court held that he was a person entitled to be admitted without previous declaration, under the provisions of section 3, Act June 25, 1910, which is as follows:

"Provided further, that any person belonging to the class of persons authorized and qualified under existing law to become a citizen of the United States who has resided constantly in the United States during a period of five years next preceding May first, nineteen hundred and ten, who, because of misinformation in regard to his citizenship or the requirements of the law governing the naturalization of citizens has labored and acted under the impression that he was or could become a citizen of the United States, and has in good faith exercised the rights or duties of a citizen or intended citizen of the United States because of such wrongful information and belief, may, upon making a showing of such facts satisfactory to a court having jurisdiction to issue papers of naturalization to an alien, and the court in its judgment believes that such person has been for a period of more than five years entitled upon proper proceedings to be naturalized as a citizen of the United States, receive from the said court a final certificate of naturalization, and said court may issue such certificate without requiring proof of former declaration by or on the part of such person of their intention to become a citizen of the United States, but such applicant for naturalization shall comply in all other respects with the law relative to the issuance of final papers of naturalization to aliens." 36 Stat. pt. 1, p. 830.

In order to be admitted under this section without previous declaration, it was necessary that defendant be a person "who because of misinformation in regard to his citizenship, or the requirements of the law governing the naturalization of citizens, has labored and acted under the impression that he was or could become a citizen of the United States, and has in good faith exercised the rights or duties of a citizen or intended citizen of the United States, because of such wrongful information and belief."

The defendant in this case did not come within the intent and meaning of this amendment to the act. This amendment was intended for special cases, which may be illustrated by those cases, which are not uncommon, where a man for years has exercised the rights and duties of citizenship, voting and serving upon juries, and holding office, believing himself to be a citizen, basing such belief upon the assumption in good faith that his father was naturalized, and that by reason of such naturalization his children, under 21 years of age at the time of such naturalization, thereby became citizens, and who then ascer-

tains that his father never was in fact naturalized. This erroneous belief as to naturalization of the parents frequently has its origin in the laws of certain states, which permit an alien, after filing declaration of intention to become a citizen, to exercise the privilege of voting; and his children, knowing that he is voting and exercising the rights of citizenship, assume that he has been naturalized.

But the statute certainly contemplates that the person who claims the right of naturalization under this provision must have exercised "the rights and duties" of citizenship. There is no claim in this case that the defendant ever exercised any of the rights and duties of citizenship. His life has been the life of the ordinary alien. There is no claim of the existence of any fact, or belief, based upon any fact, that he had the right to exercise the duties of citizenship.

Reliance is placed upon the fact that, before filing his petition for naturalization, he was advised by counsel that he had the right to be naturalized under the facts; but the advice of counsel cannot be of greater force than the decision of the court before whom the facts were presented. Under the law, the decision of the court, if erroneous, confers no rights. It would be unjust to assume that there is not ambiguity and uncertainty about the construction of this statute; but, under the authorities and under the facts, I am compelled to hold that the defendant was not a person entitled to naturalization without previous declaration, and that the judgment of the district court of Scott county, admitting him to citizenship, was erroneous, and therefore it becomes my duty to set aside and annul the order of said court admitting the defendant to citizenship, and to set aside and cancel the certificate of citizenship granted to the defendant.

Did any doubt exist in my mind as to my duty in the case, I should resolve that doubt in favor of the ruling of the court granting the naturalization; but I have no doubt, and, though I am reluctant to review the act of the district court of Scott county, my view of the law and the facts leaves no other course open.

[4] I have given consideration to the estoppel pleaded by the defendant, based upon the fact that a representative of the Bureau of Naturalization was present at the time of the hearing before the district court. The statute requires certain conditions to exist in order to entitle a person to naturalization, and no person, and no bureau, and no court, can waive these conditions; therefore the government cannot be estopped by anything shown in the record in this case.