## UNITED STATES v. MULVEY.

(Circuit Court of Appeals, Second Circuit. April 18, 1916.)

### No. 251.

**1.** ALIENS ⟨⇒⟩62—NATURALIZATION—RIGHT TO—TEMPORARY ABSENCE—"RESIDE."

Under Naturalization Act (Rev. St. § 2170 [Comp. St. 1913, § 4360]), declaring that no alien shall be admitted to become a citizen who has not for the continued term of five years preceding his admission resided in the United States, a mere temporary absence from the United States within the period will not prevent an alien from securing naturalization, for the court should search out the true meaning of the statute and give effect to that, rather than its letter; but the question whether the absence was such as to prevent naturalization is one for each case.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ⟨⇒⟩62.

For other definitions, see Words and Phrases, First and Second Series, Reside.] .

**2.** ALIENS ⟨⇒⟩62—NATURALIZATION—RIGHT TO.

The Naturalization Acts (Act March 26, 1790, c. 3, 1 Stat. 103, Act Jan. 29, 1795, c. 20, 1 Stat. 414, and Act April 14, 1802, c. 28, 2 Stat. 153) did not require aliens applying for citizenship to maintain a continuous residence within the country for the prescribed period, but Act March 3, 1813, c. 42, § 12, 2 Stat. 809, provided that an alien must have resided in the United States for the continuous term of five years next preceding his admission and without being at any time during the five years out of the territory of the United States. The last clause was repealed in 1848 (Act June 26, 1848, c. 72, 9 Stat. 240) and the Naturalization Act (Rev. St. 2170 [Comp. St. 1913, § 4360]) declares that no alien shall be admitted to become a citizen who has not for the continued term of five years next preceding his admission resided within the United States. An alien who had resided in the United States nearly the required period left with intention to return, but through unforeseen contingencies remained away for over two years. On his return he applied for naturalization. *Held* that, as the purpose of requiring an alien to be a citizen is to enable him to become familiar with local institutions, such alien, having been away nearly half of the prescribed period, was not entitled to naturalization.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ⟨⇒⟩62.]

**3.** ALIENS ⟨⇒⟩68—NATURALIZATION—APPEARANCE BY REPRESENTATIVE OF BUREAU OF NATURALIZATION.

Where, in a naturalization proceeding, a representative of the Bureau of Naturalization appears and presents to the District Court facts relative to the personal history of the applicant, but does not appear as an attorney, he should be considered as amicus curiæ, and not as representing the government adversely to the applicant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ⟨⇒⟩68.]

**4.** ALIENS ⟨⇒⟩70—NATURALIZATION—PROCEEDINGS FOR REVOCATION.

Defendant was naturalized, though a representative of the Bureau of Naturalization disclosed to the court facts which showed that the applicant was not entitled. Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (Comp. St. 1913, § 4374), declares that it shall be the duty of the United States district attorneys, upon affidavit showing a cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the district in which the naturalized citizen may reside, for the purpose of setting aside and canceling the certificate of citizenship on the

⟨⇒⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ground of fraud, or on the ground that such certificate was illegally procured. Naturalization Act, § 11, gives the government the right to appear in naturalization proceedings in opposition to the alien petitioning for a certificate. *Held* that, as the representative of the Bureau of Naturalization did not appear as an attorney, but rather as amicus curiæ, and as an appeal would have been impracticable, because the facts presented to the court were not preserved, and for the further reason that naturalization proceedings are not adversary, the order of naturalization cannot be taken as a judgment precluding the government from thereafter questioning its validity, when the certificate was procured through fraud or was illegal.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 146, 151, 154–160; Dec. Dig. ☞70.]

5. ALIENS ☞69—NATURALIZATION—PROCEEDINGS.

In such case, where the facts showed that the alien was not entitled to naturalization, the issuance of the certificate was illegal, within the act of 1906, and might be set aside on proceeding by the district attorney.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 147–153; Dec. Dig. ☞69.]

6. WORDS AND PHRASES—"ILLEGAL."

The word "illegal" means contrary to law.

Hough, District Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding by the United States of America against Patrick Mulvey to cancel and set aside a decree of naturalization. From an order dismissing the petition, petitioner appeals. Reversed, with instructions to enter order of cancellation, without prejudice to subsequent application.

H. Snowden Marshall, U. S. Atty., of New York City (Earl B. Barnes, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Joseph Forrester, of New York City, for appellee.

Before COXE and ROGERS, Circuit Judges, and HOUGH, District Judge.

ROGERS, Circuit Judge. This is a proceeding in which the government of the United States seeks to have the naturalization of the respondent set aside, canceled and declared null and void, and to have him restrained and enjoined from setting up or claiming any rights, privileges, benefits, or advantages whatsoever under his decree of naturalization.

[1, 2] The proceeding is under the provisions of section 15 of the Act of Congress of June 29, 1906, which provides as follows:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and cancelling the certificate of citizenship on the ground of fraud or on the ground that such certificate * * * was illegally procured. * * *" 34 Stat. 601.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Naturalization Act contains the following provision:

"No alien shall be admitted to become a citizen who has not for the con-tinued term of five years next preceding his admission resided within the United States." U. S. Rev. Stat. (2d Ed. 1878) § 2170 (Comp. St. 1913, § 4360).

It appears that the respondent is a native of Ireland and first arrived in the United States from that country in April, 1908, when he reached the port of the city of New York. He remained continuously in New York from that time until July 18, 1912, when he departed from the country taking a ship for Ireland. His return to Ireland was occa-sioned by news he received of his mother's illness. His intention was to see his mother, who was a widow, and had written him of her illness, and asked that he return; and at the time he left the United States it was with the intention of returning to this country, and of marrying a woman to whom he was engaged, and who lived here. That at the time he left the United States he had the intention of re-turning is shown by the fact that he left his clothes and a trunk here with his sister, with whom he had lived. After he arrived in Ireland, his mother wanted him to remain with her for a time. This he consent-ed to do, and it was not until September 19, 1914, that he left Ire-land, arriving in this country on September 27, 1914. When he first reached the United States, two brothers and three sisters were already living here, and they have since remained here. We have no doubt, upon the testimony in the record, that the respondent fully intended to return, when he left this country, and that he never changed his intentions.

Having arrived the second time in the United States, as above stated, on September 27, 1914, he applied for his naturalization papers on December 28, 1914, and a final hearing was had on April 13, 1915. The facts in reference to his absence were known to the District Court, but that court was under the impression that he was entitled to nat-uralization and had not lost his residence by his visit to Ireland.

The question is whether an alien, who came to the United States five years prior to his naturalization, but has been absent from the United States during the five-year period for a period of two years and two months, and during the entire period of his absence has intended to return to this country, is entitled to have such absence disregarded upon his actual return to the United States, so that the time of his ab-sence may be counted as a part of "the continued term of five years next preceding his admission" to citizenship during which he must have resided in the United States.

In other words, what did Congress mean when it enacted that no alien should be admitted to become a citizen "who has not for the con-tinued term of five years next preceding his admission resided within the United States"? Must the alien be actually resident within the country for the entire period of five years, so that a temporary absence at any time during the period will deprive him of the advantage of the previous actual residence, and make it necessary to date the beginning of his "continued term of five years" from the date of his return, rather than from the date of his original arrival? It cannot be

supposed that Congress intended that any such unreasonable construction should be placed upon the act. Where adherence to the strict letter of a statute would lead to injustice or to manifest absurdity, it cannot be supposed that the lawmaking body intended any such result. In such cases the duty devolves upon the court to search out the true meaning of the statute and to permit the spirit or reason of the law to prevail over its letter. A thing may be within the letter of a statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. See Holy Trinity Church v. United States, 143 U. S. 457, 459, 12 Sup. Ct. 511, 36 L. Ed. 226 (1892).

This court does not entertain the idea that Congress meant by this enactment that an alien must be actually and physically within the United States for every day of the five-year period. And if it is not necessary that the alien be actually present within the territory of the United States for every moment of the five-year period, then the court is confronted with the question how much of the time may he be absent. This obviously raises a question of some difficulty. But the difficulty it presents must not lead the court into the absurdity of concluding that the continuous character of an alien's residence is fatally destroyed if, for any purpose and for any length of time, he temporarily goes beyond the country's borders. We think that each case of this kind must be decided according to its own circumstances. If an alien departs from the United States with no intention of returning, he may by that act lose his residence in this country, so that if, after a time, he again changes his mind and returns to this country, the continuous character of his previous residence has been fatally destroyed, and the five-year period of continuous residence will date from his return. If, however, he departs for a temporary purpose and with an intention of returning, which exists during the whole period of his absence, and at length does return, then the question of whether his absence has put an end to the continuous character of his residence is one which the court must determine according to the facts of the case.

In the case at bar the respondent was absent for nearly one-half of the prescribed period of five years. The purpose of requiring aliens applying for citizenship to reside continuously within the country for five years is not only to satisfy the government as to the good faith of the applicant and as to his good character, but it is also to afford the alien a sufficient opportunity to understand and familiarize himself with our institutions and mode of government. In the opinion of Congress five years is none too long a period for this purpose. That being the case, we have no doubt that an absence from the United States for a period of two years and two months from the time the alien arrived will preclude him from being entitled to naturalization five years from the date of his original arrival. Actual residence within the country for a little over half of the required time and a constructive residence for the balance of the time is not a compliance with the act of Congress.

The Naturalization Act of 1790 (Act March 26, 1790, c. 3, 1 Stat. 103), and that of 1795 (Act Jan. 29, 1795, c. 20, 1 Stat. 414),

and that of 1802 (Act April 14, 1802, c. 28, 2 Stat. 153), did not require aliens applying for citizenship to maintain a "continuous" residence within the country for the prescribed period. But Act March 3, 1813, c. 42, § 12, 2 Stat. 809, first provided that the alien must have resided in the United States "for the continued term of five years next preceding his admission," and added, "without being at any time during the said five years, out of the territory of the United States." The last-mentioned clause was repealed by Act June 26, 1848, c. 72, 9 Stat. 240. But since the act of 1813 the law has required residence for the continuous term of five years, or, as the act now reads, "for the continued term of five years." The fact that in the earliest acts a "continuous" residence was not required, while in the latter acts and in the existing law it must be for a "continued term," is significant. It is also significant that, while retaining "the continuous term" of the act of 1813, there has been eliminated the clause "without being at any time during the said five years, out of the territory of the United States." And while a resident domicile in this country might not be interrupted by transient absences animo revertendi, we are satisfied that for the purposes of this act it is interrupted by an absence which extends over a period of two years and two months. To hold otherwise, it seems to us, is to destroy and make of little effect the obvious purpose of Congress in establishing the continued term of five years.

This case is somewhat similar in its facts to that of United States v. Cantini, 212 Fed. 925, 129 C. C. A. 445 (1914), decided in the Third Circuit. In that case, as in this, the government sought to cancel a certificate of naturalization. The defendant came from Italy to the United States and had been in this country for more than nine years, when he returned to Italy to visit his parents for three months. For various reasons his stay there was prolonged. The court below found as a fact that he had never abandoned, nor intended to abandon, his residence in this country. He remained away, however, for two years, returning on August 22, 1910. Naturalization was granted him in 1911. The government asked to have the certificate canceled on the ground that he had not resided in the United States for the continued term of five years next preceding his admission. The District Court denied the relief asked, on the ground that, as there had been no change in his domicile during the period of his absence, his right to naturalization was not lost. The Court of Appeals reversed the case, saying that the undisputed facts before it seemed to establish the fact that the man had not resided continuously within the United States for five years preceding his application.

[3, 4] Before concluding this opinion it is proper to say that we do not think the District Court was without jurisdiction to consider the matter submitted to it. The claim was made that, as the government is given by section 11 of the Naturalization Act the right to appear in naturalization proceedings and to be heard in opposition, it is bound by the order of the court in granting naturalization, unless it sues out a writ of error. No writ of error was obtained. Instead the government filed a petition in the District Court asking for the cancellation of

the certificate. The petition was brought in May, 1915, and the decree admitting to citizenship was entered on April 13, 1915. The petition was dismissed, and this appeal was taken.

A proceeding for the naturalization of an alien is in a certain sense a judicial proceeding, which results in a judgment. But the United States is not for all purposes concluded thereby. The proceeding is not adversary in its nature. The government is not a necessary party to the proceeding, and no notice is required to be given to it. See Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066 (1912). In that case the government filed a petition to cancel a certificate of citizenship alleged to have been fraudulently and illegally procured. The lower court overruled the demurrer to the petition and canceled the certificate, and the Supreme Court affirmed the decree. The petition was filed under section 15 of the act of 1906. In that case the original proceeding had been without notice to the government and was upon ex parte proofs. The decision, therefore, is confined to a judgment rendered under such circumstances. The Supreme Court refrained from expressing any opinion as to the effect of a judgment allowing naturalization in a case where the government had appeared and litigated the matter.

In the case at bar a representative of the Bureau of Naturalization had appeared before the District Court when the application for the certificate of citizenship was pending and placed before it the facts as to the applicant's absence in Ireland. The court thought that these facts did not deprive the respondent of his right to be naturalized, inasmuch as he had not lost his residence. After this decision the chief naturalization examiner in New York City requested the United States district attorney to institute this proceeding. It does not affirmatively appear in this record that any law officer of the government was heard in opposition in the proceeding originally had before the District Court, or that he was present or took any part in the proceedings. All that is disclosed is that some one connected with the Bureau of Naturalization was present and was heard in opposition. The representative of the Bureau was not the attorney for the government in the district in which the proceeding took place, and he was not even an attorney. His appearance at such hearings is as amicus curiæ, to present to the court such facts relative to the personal history of the several applicants as the Bureau's investigations may have disclosed. The order admitting the respondent to citizenship recites no appearance by the government on the hearing, no minutes of the testimony were taken, and no record preserved. Under such circumstances we do not think that the appearance of a representative of the Bureau in the proceedings is to be regarded as an appearance by the United States in the technical sense in which that word is used in judicial proceedings. The United States, therefore, is not so bound by the decree that it is not entitled to proceed by petition to cancel the certificate so issued. And it is not necessary that the proceeding to cancel be commenced before the District Judge who entered the order admitting the respondent to citizenship. The fact is quite immaterial that in the present case it was instituted before another District Judge of the same district exercising co-ordinate jurisdiction.

[5, 6] Section 15 of the act authorizes the district attorney to proceed by petition to set aside the certificate "on the ground of fraud or on the ground that such certificate was illegally procured." It is conceded that no fraud was practiced on the court. And it is said that, while the certificate in this case may have been erroneously granted, it was not illegally procured, and that therefore the right to proceed by petition does not exist. We do not agree to that view of the statute. The word "illegal" means contrary to law, and therefore we think that the word as employed in this particular statute may be construed to mean that, whenever an alien has obtained a certificate of citizenship which is unauthorized by the Naturalization Act, he has procured it "illegally," or contrary to law. Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment and the statute should be given that construction which is best calculated to advance its object. In naturalization proceedings it is not usually the case that the government is represented by its law officers, or that minutes of the testimony are taken and a record preserved, upon which a writ of error or an appeal can be based. The particular case now before us is a good illustration of the practice. There is no record of the testimony that was taken at the original hearing before the District Judge, and if the district attorney had attempted to bring the matter before this court on writ of error or an appeal, we would have been precluded from passing upon the merits because of the absence of the testimony. Moreover the courts have decided that there is no right to review by writ of error the action of a District Court in a naturalization proceeding, it not being a "case" within the act of Congress conferring jurisdiction upon the Circuit Courts of Appeal "in all cases" etc. See United States v. Dolla, 177 Fed. 101, 100 C. C. A. 521 (5th Circuit); United States v. Neugebauer, 221 Fed. 938, 137 C. C. A. 508. There was reason enough, therefore, for the enactment of the provision authorizing the district attorney to proceed by petition in this class of cases, and we are not inclined to give to its language a meaning which would unnecessarily, and so far as we can see without good reason, narrow the object intended to be accomplished.

It may be said in passing that this court has in several cases had before it upon appeal the action of District Courts in naturalization proceedings. We have never had the question raised in any of them by counsel whether the court had jurisdiction to proceed upon appeal in such cases. The court's jurisdiction was not challenged in any of them, and without benefit of argument we were not disposed to decide the question. And the question is not now before us, and we express no opinion one way or the other concerning it. We have simply called attention to the matter for the purpose of showing that a serious doubt existed in the minds of the profession as to whether the right to review upon either writ of error or upon appeal existed.

We may also point out that in the cases in which this court reviewed upon appeal proceedings in naturalization the records disclose that the

United States attorney had appeared on behalf of the government in opposition to the applicant's petition at the final hearing in the District Court, and a record had been made of the testimony and proceedings there had. United States v. Cohen, 179 Fed. 834, 103 C. C. A. 28, 29 L. R. A. (N. S.) 829; United States v. Poslusny, 179 Fed. 836, 103 C. C. A. 324; United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660; Yunghauss v. United States, 218 Fed. 168, 134 C. C. A. 67.

The Court of Appeals in the Third Circuit has evidently placed the same construction on section 15 of the act as that which we place upon it. For upon facts very similar to those in the case at bar, and which have already been stated in an earlier part of this opinion, it canceled the certificate upon petition. United States v. Cantini, supra. And there are a number of cases in the District Courts in which upon peti- tion certificates have been canceled for errors of law. United States v. Plaistow (D. C.) 189 Fed. 1006; United States v. Nopoulos (D. C.) 225 Fed. 656; United States v. Albertini (D. C.) 206 Fed. 133; United States v. Van Der Molen (D. C.) 163 Fed. 650; United States v. Schurr (D. C.) 163 Fed. 648.

The decree dismissing the petition is reversed, with instructions to enter an order of cancellation, but without prejudice to the respondent's right to make a new application at the proper time.

HOUGH, District Judge (dissenting). Whether Mulvey shall be a citizen by virtue of the naturalization complained of seems unim- portant—certainly to Mulvey, who has not appeared in this court. The substantial question is by what method shall error in naturalization be corrected?

It is plain from this record (and undenied) that every piece of evi- dence presented under this petition was laid before the court which granted naturalization, and also that the United States was represented at the hearing and then and there objected to Mulvey's admission. No fraud, in the sense of either suppressing truth or suggesting falsehood, is alleged or argued. There was no illegality on the part of Mulvey in applying for naturalization to that court, nor in telling the truth (as he did) about his history and movements. The only arguable point arising in or suggested by the naturalization proceeding was whether Mulvey's residence in this country had been continuous.

Procedure by this independent suit, instead of appeal from the nat- uralization order, is said to be justified by section 15 of the Naturali- zation Law, which authorizes and directs the institution of proceed- ings demanding the cancellation of certificates of citizenship "on the ground of fraud or on the ground that such certificate was illegally procured." There is a plain difference between illegality and irregu- larity or error. "Illegality" signifies "that which is contrary to the principles of law, and denotes a 'complete defect in the proceedings.'" People v. Kelly, 1 Abb. Prac. N. S. (N. Y.) 437. "Irregularity is want of adherence to some prescribed rule. * * * Illegality is predicable of radical defects only, and signifies that which is contrary

to the principles of law, as distinguishable from mere rules of pro-
cedure." Ex parte Mooney, 26 W. Va. 40 (53 Am. Rep. 59).[1] "Er-
roneous" connotes merely a mistake in the application of the law or
the ascertainment of fact. ,

The only purpose of this suit is by a new action wholly independent
of the original proceeding to lay the evidence upon which the naturali-
zation judge legally, though perhaps erroneously, acted before another
trial court in order to correct an alleged error in applying the law to
admitted facts. Complainant's position is perhaps best shown by one
phrase in the record where counsel (perhaps inadvertently) declared
that Mulvey's certificate had been "illegally granted." It may have been
erroneously granted, but the grant was not illegal, for such is not the
effect of error in the exercise of lawful jurisdiction. "A judgment
cannot be unlawful, unless that judgment be an absolute nullity; and
it is not a nullity if the court has general jurisdiction of the subject,
although it should be erroneous." Per Marshall, C. J., Ex parte Wat-
kins, 3 Pet. at 203, 7 L. Ed. 650.

The question whether the statute referred to requires, or even ex-
cuses, the correction of error by a new suit, is I think a matter of
considerable importance. The nature of naturalization proceedings in
the United States has never been doubtful. The statutory method of
acquiring citizenship has varied only in detail during the last century.
In Spratt v. Spratt, 4 Pet. 393, 7 L. Ed. 897, Marshall, C. J., pointed
out that the statutes—

"submit the decision on the right of aliens to admission as citizens to courts
of record. They are to receive testimony, to compare it with the law, and to
judge on both law and fact. This judgment is entered on record as the judg-
ment of the court. It seems to us, if it be in legal form, to close all inquiry,
and, like every other judgment, to be complete evidence of its own validity."

In Mutual Benefit, etc., Co. v. Tisdale, 91 U. S. 245, 23 L. Ed. 314,
Hunt, J., said that the certificate of citizenship "is against all the world
a judgment of citizenship." [2]

There was no difficulty in reviewing this naturalization order by an
appeal as from a chancery decree. This has been done in this court
in United States v. Cohen, 179 Fed. 834, 103 C. C. A. 28, 29 L. R. A.
(N. S.) 829; United States v. Poslusny, 179 Fed. 836, 103 C. C. A. 324;
United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660; and Yung-
hauss v. United States, 218 Fed. 168, 134 C. C. A. 67. These cases

---

[1] This definition of illegality comes from Tidd's Practice, and has been
adopted or favored in Ex parte Sewartz, 2 Tex. App. 74; Barton v. Saunders,
16 Or. 51, 16 Pac. 921, 8 Am. St. Rep. 261; Ex parte Gibson, 31 Cal. 619, 91
Am. Dec. 516; and Bronk v. State, 43 Fla. 461, 31 South. 248, 99 Am. St.
Rep. 119, where many other cases are cited. See also Thompson v. Doty, 72
Ind. 336; People v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211.

[2] To the same effect see Campbell v. Gordon, 6 Cranch, 176, 3 L. Ed. 190;
Ex parte Gregg, 2 Curtis, 98 Fed. Cas. No. 3,380; In re Coleman, 15 Blatch.
406, Fed. Cas. No. 2,980; Pintsch, etc., Co. v. Bergin (C. C.) 84 Fed. 140;
McCarthy v. Marsh, 5 N. Y. 279; People v. Snyder, 41 N. Y. 397; State v.
Hoeflinger, 35 Wis. 400; State v. Macdonald, 24 Minn. 58. And for a review
of the matter in an independent suit to annul a certificate of naturalization on
the ground of fraud, see United States v. Norsch (C. C.) 42 Fed. 417.

indicate that we have declined to follow United States v. Dolla, 177 Fed. 101, 100 C. C. A. 521, and United States v. Neugebauer, 221 Fed. 938, 137 C. C. A. 508. The word "case," in section 128, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1133 [Comp. St. 1913, § 1120]), is not used in so narrow a sense as to deprive this court of the duty of reviewing a final order in so serious a matter as citizenship. Therefore is cannot be contended that no remedy other than this original suit existed, which is the case in those circuits where the Dolla and Neugebauer decisions are in force.

Since, therefore, Mulvey's certificate was neither illegally procured nor granted, and since there was no fraud, it is clear to me that the statute by which it is sought to justify this petition does not cover the mere correction of error or irregularity. The statute finds its application to cases where the record of naturalization is fair, where no appeal upon that record would unfold to the appellate court any error, irregularity, or mistake, with the result that it is only by new matter and a new record that relief can be obtained.

There is nothing in Johannessen v. United States, 225 U. S. 227, at page 237, 32 Sup. Ct. 613, at page 615 (56 L. Ed. 1066), to contradict these views. Indeed, such a proceeding as this was expressly excluded from consideration when Pitney, J., said:

"What may be the effect of a judgment allowing naturalization in a case where the government has appeared and litigated the matter does not now concern us."

The majority decision herein gives to the United States (but not to the applicant) a choice of two methods of correcting errors in naturalization: It may either appeal direct or bring an action such as this, wherein it is sought (in effect) to reverse one decree by the entry of another, oftentimes in the same court. A more disorderly and undesirable practice I cannot imagine, and I believe it also to be unjustifiable, because section 15 of the act authorizes suits of this kind only for fraud and illegality, and not for the correction of error.