## UNITED STATES v. KOOPMANS.

### (District Court, E. D. New York. May 14, 1923.)

**1. Aliens ⬡67—United States court has jurisdiction to cancel naturalization certificate granted by state court.**

Where a certification of naturalization is illegally granted by a state court, a District Court of the United States for the district within which the naturalized citizen resides has jurisdiction, at the instance of the United States, to cancel and vacate it.

**2. Aliens ⬡71½—Rule as to determining whether certificate of naturalization should be canceled, as "illegally" granted, stated.**

In determining whether a certificate of naturalization has been illegally granted, so as to warrant its cancellation, the word "illegally" means contrary to provisions of law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Illegal—Illegally.]

**3. Aliens ⬡71½—Proceeding for cancellation of illegal certificate not by appeal.**

Since there is no appeal in naturalization proceedings, the proper remedy for the cancellation of a certificate of naturalization illegally granted is not by appeal, but by original proceeding for that purpose.

**4. Aliens ⬡67, 71½—Naturalization proceeding in state court must be initiated in county of applicant's residence.**

Under Naturalization Law, §§ 3, 5, 6 (Comp. St. §§ 4351, 4353, 4354), providing that the naturalization jurisdiction of courts shall extend only to aliens within the respective judicial districts of such courts, and providing for notice of the petition by posting, and providing for final action on such petition, held that an application for naturalization in the state courts must be made before the clerk of the court in the political subdivision in which the applicant resides, and inasmuch as the clerks of the several counties in the state of New York are by virtue of their offices clerks of the Supreme Court within their respective counties, an application in such court must be made within the county in which the applicant resides, and such application must be filed with the clerk of that county, and the notice posted therein, and a certificate of naturalization granted on an application made by the resident of another county was illegally granted, and subject to cancellation, notwithstanding the apparent hardship, since the applicant for citizenship by ordinary care could have avoided this result.

In Equity Action by the United States against Henry Koopmans to cancel defendant's certificate of naturalization. Judgment for petitioner.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ralph C. Greene, U. S. Atty., and Joseph M. Crooks, Asst. U. S. Atty., both of Brooklyn, N. Y.

Buchner & Gilmore, of Brooklyn, N. Y., for defendant.

CAMPBELL, District Judge. This is an action in equity to set aside, cancel, and declare null and void a certificate of naturalization issued out of the Supreme Court of the State of New York, County of Kings, on December 22, 1921. The bill is filed under the provisions of section 15 of the Act of June 29, 1906 (Comp. St. § 4374), and so much thereof as is necessary for consideration in the instant case reads as follows:

"Sec. 15. That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured, * * *"

and is predicated upon the theory that the respondent's certificate was illegally procured, for the reason that he was not a resident within the county of Kings at the time he filed his declaration of intention, or at the time that he filed his petition to become a citizen of the United States, but, on the contrary, was a resident of Queens county.

No question of fact is presented, but two questions of law arise: (1) Has this court jurisdiction to set aside the certificate of naturalization granted by a state court, the jurisdiction of which in such matters is co-ordinate with this court? (2) Did Congress by the use of the words "judicial district," in the Naturalization Law, intend to describe the judicial districts into which the state of New York is divided for the purpose of the election of members of the Supreme Court and other purposes; or did it intend to describe those political subdivisions which have a clerk of the court, who by the act is granted authority to receive the declaration?

[1] There seems to be but little argument with reference to the first question, for, while it is true that there have been one or two decisions which would seem to hold that this court did not have jurisdiction to set aside a certificate granted by a state court, yet the great weight of authority is to the contrary; because it has been held in many cases in the United States courts that, where a certificate of naturalization is illegally granted by a state court, a District Court of the United States for the district within which the naturalized citizen resides has jurisdiction at the instance of the United States to cancel and vacate it. U. S. v. Nisbet (D. C.) 168 Fed. 1005; U. S. v. Mansour (D. C.) 170 Fed. 671; U. S. v. Simon (C. C.) 170 Fed. 680; U. S. v. Meyer, 170 Fed. 983; U. S. v. Spohrer (C. C.) 175 Fed. 440; U. S. v. Aakervik (D. C.) 180 Fed. 137; U. S. v. Nopoulos (D. C.) 225 Fed. 656; U. S. v. Griminger (D. C.) 236 Fed. 285.

[2] The question of what is meant by "illegally obtained" has been discussed with great frequency, and is treated in all of the cases hereinbefore cited, and the weight of authority seems to be that "illegally" means contrary to the provisions of the law.

[3] There is some contention on the part of the respondent that the remedy which should have been sought by the United States in this matter would have been by an appeal from the determination of the court which granted the certificate of naturalization. This is not borne out by the decisions of our courts, because the weight of authority is that there is no appeal in naturalization proceedings. U. S. v. Dolla, 177 Fed. 101, 100 C. C. A. 521; U. S. v. Neugebauer, 221 Fed. 938, 137 C. C. A. 508; U. S. v. Mulvey, 232 Fed. 513, 146 C. C. A. 471; Johannessen v. U. S., 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066; U. S. v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321.

In the matter at bar there does not seem to be any dispute as to the fact that the law required the application to be made and filed in the clerk's office in the judicial district in which the applicant resided. So much of section 3 of the Naturalization Law (Comp. St. § 4351) as is necessary for consideration in the instant case reads as follows:

"That the naturalization jurisdiction of all courts herein specified—state, territorial, and federal—shall extend only to aliens resident within the respective judicial districts of such courts."

The question is thus presented: What was meant by the use of the words "judicial district" in section 3 of the act, as applied to the state courts of New York; and in order to determine that, reference must be had to other sections of the law, because the whole law must be read together in order to determine its meaning.

Section 5 of the Naturalization Law (Comp. St. § 4353) reads as follows:

"Sec. 5. That the clerk of the court shall, immediately after filing the petition, give notice thereof by posting in a public and conspicuous place in his office, or in the building in which his office is situated, under an appropriate heading, the name, nativity, and residence of the alien, the date and place of his arrival in the United States, and the date, as nearly as may be, for the final hearing of his petition, and the names of the witnesses whom the applicant expects to summon in his behalf; and the clerk shall, if the applicant requests it, issue a subpœna for the witnesses so named by the said applicant to appear upon the day set for the final hearing, but in case such witnesses cannot be produced upon the final hearing other witnesses may be summoned."

Again, in section 6 (Comp. St. § 4354), we find that which aids in a determination of the meaning of the words "judicial district," for so much of section 6 as is necessary for consideration in the matter at bar reads as follows:

"Sec. 6. That petitions for naturalization may be made and filed during term time or vacation of the court, and shall be docketed the same day as filed, but final action thereon shall be had only on stated days, to be fixed by rule of the court, and in no case shall final action be had upon a petition until at least ninety days have elapsed after filing and posting the notice of such petition."

From a careful consideration of the portion of the law which I have hereinbefore quoted, it seems that the application must be made before the clerk of the court in the political subdivision in which the applicant resides, because the provision for posting notice of the ap-

plication must have been enacted with the idea of serving some useful purpose, and that is to call the attention of those who would be most likely to know the applicant, and able to furnish reasons in opposition to his admission to citizenship, if such reasons existed. This purpose could in no sense be served if the notice was posted in the clerk's office of some county other than that in which the applicant resided, or the application should be made to the clerk of such county, because the people residing in the same county with the applicant would have no business in such clerk's office, and therefore, in the natural order of things, would not be apprised of such application. That is especially true in the state of New York, where some of the judicial districts, as laid out by the state, include a large number of counties, some of which are a great distance from the others, and the residents have no business in any county clerk's office but that in their own county, whereas the federal judicial district has but one clerk, and the business of the district is done in his office.

[4] Therefore I conclude that what Congress meant by "judicial district" was the political subdivision of the state as to which the duties of the clerk extended, and as the clerks of the several counties in the state of New York are by virtue of their offices clerks of the Supreme Court within their respective counties, Congress intended that the application must be made within the county in which the applicant resided, that such application should be filed with the clerk of that county, and the notice posted therein, so that some useful purpose might be served by the posting of such notice.

The opinion I hold and have indicated herein is supported by authority as this question has heretofore been decided. Petition of Briese (D. C.) 267 Fed. 600; U. S. v. Galdun (U. S. D. C. S. D. N. Y., not reported, January 23, 1922), in which Judge Learned Hand wrote an opinion as follows:

"This suit is intended to review the action of the court which naturalized the alien; therefore it requires of me an independent judgment. The question is indeed far from clear, but I think it must be resolved in the plaintiff's favor. When in section 4 the statute says that the alien must take out his declaration 'before the clerk of any court authorized by this act to naturalize aliens, or his authorized deputy, in the district in which such alien resides,' it must be understood to mean one clerk only. That must mean, when applied to New York, the clerk of the Supreme Court in the county where he resides, else it would include the clerk of any county in his judicial district and would not be a single clerk at all. But, if 'district' means county in section 4, 'judical district,' in section 3, must, I think, mean the same. It cannot be that an alien may declare in one place and apply in another; that would only complicate the procedure. 'Judicial district' was not used in the sense in which the New York Constitution used it; it included all sorts of judicial subdivisions where courts sit. The purpose was to have the alien apply where he lived. I agree with In re Julius Briese, and with the uniform practice of the courts, except in this case."

Considering the instant case solely on the question of law, it might seem to be hard for the defendant to revoke his certificate of naturalization, because there might be a feeling that the fault was in some measure that of those in authority; and while that, of course, could not enter into the discussion of the legal question, still in this case, so

far as the final certificate is concerned, no such question can arise, because it appears by the evidence that the respondent was informed by the examiner, before his application was finally heard, that it was improperly made in Kings county, he being a resident of Queens county, and he, by the exercise of ordinary care, might have avoided whatever difficulty confronts him in so far as this action is concerned.

I therefore find that the certificate of naturalization obtained by the respondent was illegally obtained, and should be set aside, canceled, and declared null and void.

Judgment for petitioner.