# JOHANNESSEN *v.* UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 230.   Submitted April 22, 1912.—Decided May 27, 1912.

Prior decisions of this court holding that a judgment of a competent court admitting a person to citizenship is, like every other judgment, competent evidence of its own validity, go no further than protecting the judgment from collateral attack.

Congress may authorize direct proceedings to attack certificates of citizenship on the ground of fraud and illegality; and § 15·of the act of June 29, 1906, 34 Stat. 596, 601, c. 3592, providing for such cases, is a valid exercise of the power of Congress under Art. I, § 8 of the Constitution of the United States.

The foundation of the doctrine of *res judicata* or estoppel by judgment is that both parties have had their day in court, *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1, 48; and where a certificate of naturalization was issued without the Government appearing there is no estoppel against it, nor is such a certificate conclusive against the public.

Certificates of naturalization, like patents for land or inventions, when issued *ex parte* can be annulled for fraud.

How the judicial review of a certificate of naturalization should be conducted rests in legislative discretion.

*Quære* as to the conclusive effect of a certificate of naturalization issued after appearance and cross-examination by the Government.

*Quære:* Whether, in the absence of statute such as the act of June 29, 1906, a court of equity could set aside, or restrain the use of, a certificate of naturalization.

The act of June 29, 1906 is not unconstitutional as an exercise of judicial power by the legislative branch of the Government, nor is it unconstitutional because retrospective.

The *ex post facto* provision of the Constitution is confined to laws affecting punishment for crime and has no relation to retrospective legislation of any other description.

An alien has no legal or moral right to retain citizenship obtained solely by fraud, and an act permitting the cancellation of a certificate so obtained is not a punishment but simply nullifies that which the party had no right to.

THE facts, which involve the power of the court under the act of June 29, 1906, c. 3592, to cancel a certificate of naturalization on the ground that it was fraudulently issued, are stated in the opinion.

*Mr. Edward J. McCutchen* and *Mr. Samuel Knight* for appellant:

A decree of naturalization is a judgment of a court, and, therefore, subject to all the rules of law regarding judgments as such. *Spratt* v. *Spratt*, 4 Pet. 393; 2 Black, Judg., § 804; *McCarthy* v. *Marsh*, 5 N. Y. 263; *The Acorn*, Fed. Cas. No. 29; *Charles Green's Son* v. *Salas*, 31 Fed. Rep. 106; *In re Bodek*, 63 Fed. Rep. 813; *Pintsch Com. Co.* v. *Bergin*, 84 Fed. Rep. 140; *Ex parte Knowles*, 5 California, 300; *Tinn* v. *United States Dist. Atty.*, 148 California, 773; *Matter of Christern*, 43 N. Y. Sup. Ct. 523; *S. C.*, 11 Jones & Spencer, 523; *Matter of Clark*, 18 Barb. 444; *United States* v. *Gleason*, 78 Fed. Rep. 396; 90 Fed. Rep. 778.

A court of equity will not set aside a judgment on the ground that it is founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. *United States* v. *Throckmorton*, 98 U. S. 61; *Vance* v. *Burbank*, 101 U. S. 514; *Steel* v. *St. Louis Smelting &c. Co.*, 106 U. S. 447; *Moffat* v. *United States*, 112 U. S. 24; *Hilton* v. *Guyot*, 42 Fed. Rep. 249, 252; *S. C.*, 159 U. S. 113;

*United States* v. *Gleason,* 78 Fed. Rep. 396; *S. C.,* 90 Fed. Rep. 778.

The act of 1906, under which it is sought to cancel defendant's certificate of citizenship, operates as an *ex post facto* law, and is, therefore, within the prohibition of § 9 of Art. I of the Constitution of the United States. *Ex parte Garland,* 4 Wall. 333; *Cummings* v. *Missouri,* 4 Wall. 277; *Kring* v. *Missouri,* 107 U. S. 221; *Commonwealth* v. *Edwards,* 39 Kentucky (9 Dana), 447; *United States* v. *Starr,* 27 Fed. Cas. No. 16,379; *Green* v. *Shumway,* 39 N. Y. 418.

If the act of June 29, 1906, authorizes the impeachment of the judgment of a coördinate court for fraud consisting of the introduction of relevant perjured testimony, it is unconstitutional as an exercise of judicial power by the legislature. *Wieland* v. *Shillock,* 24 Minnesota, 345; *Roche* v. *Waters,* 72 Maryland, 264; *Re Handley's Estate,* 15 Utah, 212; Cooley's Const. Lim., 6th ed., 111; 1 Black on Judgments, 298; *Atkinson* v. *Dunlap,* 50 Maine, 111; *United States* v. *Aakervik,* 180 Fed. Rep. 137; *Davis* v. *Menasha,* 21 Wisconsin, 497; *State* v. *Flint,* 61 Minnesota, 539; 63 N. W. Rep. 113.

A statute should be construed to have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively. *Calder* v. *Bull,* 3 Dall. 386; Cooley's Const. Lim. 529; 8 Cyc. 1022; 28 Am. & Eng. Ency. Law, 693.

*Mr. Assistant Attorney General Harr* for the United States:

The last paragraph of § 15 of the act of June 29, 1906, expressly applies not only to certificates of citizenship issued under the provisions of that act, but to all certificates theretofore issued by any court under prior laws.

Under §§ 2165, 2170, Rev. Stat., the continuous residence of an alien within the United States for the requisite

length of time was, under the old law, as under the act of June 29, 1906, a matter which went to the power of the court to act. If he could not meet this requirement, the court had no jurisdiction in the premises. The contention, therefore (based on *United States* v. *Throckmorton*, 98 U. S. 61), that if, as in the present case, a court was induced to naturalize an alien by a misrepresentation of the facts as to his residence, Congress has no authority to authorize a judicial proceeding for the cancellation of his certificate of naturalization so obtained, is manifestly untenable. It amounts to saying that one could by fraud confer jurisdiction upon the courts to do that which Congress had expressly withheld from them, and which they had no power to do except by virtue of authority from Congress. *United States* v. *Throckmorton*, 98 U. S. 61, 68.

But even if Congress has no greater power to authorize proceedings to cancel a judgment of naturalization than is possessed by a court of equity with respect to ordinary judgments or decrees the *Throckmorton Case* is inapplicable, because that case has reference only to proceedings *inter partes*, and has no application to *ex parte* proceedings by which a grant is obtained from the Government. *Moffatt* v. *United States*, 112 U. S. 24, 32; *United States* v. *Minor*, 114 U. S. 233; *United States* v. *Am. Bell Telephone Co.*, 128 U. S. 315; *Hilton* v. *Guyot*, 159 U. S. 207; *United States* v. *Am. Bell Telephone Co.*, 167 U. S. 224, 240.

A naturalization proceeding (at least prior to the act of June 29, 1906, § 11, which gives the Government the right to be heard therein) was entirely *ex parte*. There was no contest by the Government, and no adversary proceedings. It was therefore similar in all substantial respects to an application to the Government for a patent for land.

Prior to the act of June 29, 1906, the power of the Federal court to cancel a certificate of naturalization obtained by fraud was recognized. *In re McCoppin*, 5

Saw. 630, 632; *United States* v. *Norsch,* 42 Fed. Rep. 417.

The constitutionality of the act of June 29, 1906, and the jurisdiction of the United States courts thereunder to cancel a certificate of naturalization, whether issued by a state or Federal court, where it appears that the certificate has been procured without compliance with the requirement of the law as to residence in the United States, has been sustained in the following cases: *United States* v. *Nisbet,* 168 Fed. Rep. 1005; *United States* v. *Mansour,* 170 Fed. Rep. 671; *United States* v. *Simon,* 170 Fed. Rep. 680; *United States* v. *Meyer,* 170 Fed. Rep. 983; *United States* v. *Spohrer,* 175 Fed. Rep. 440; *United States* v. *Luria,* 184 Fed. Rep. 643.

Appellant must rest entirely upon *United States* v. *Gleason,* 78 Fed. Rep. 396, affirmed, 90 Fed. Rep. 778, Judge-Wallace dissenting.

In *Campbell* v. *Gordon,* 6 Cranch, 176, and *Spratt* v. *Spratt,* 4 Pet. 392, on which that decision was based held merely that a judgment of naturalization could not be collaterally attacked. Here, the issue is whether the Government, which made the grant, can authorize a direct proceeding for the purpose of having it set aside for fraud. See 3 Moore, Int. Law Dig. 500.

The view that naturalization is a judicial act because it is done by judges (*United States* v. *Dolla,* 177 Fed. Rep. 101, 105), rather than because of the nature of the act, is apparent when the nature of the act is analyzed, and is confirmed by the fact that in most countries it is performed by administrative officers. In England naturalization is conferred upon application to one of the principal secretaries of state; in France, by the President of the Republic; in Russia, by the minister of the interior; in Prussia, by the police authorities; in Norway, by the Storthing; in Turkey, by the minister of foreign affairs; and by the chief executive authority in all other European

countries.   (Report to the President of the Commission on Naturalization, H. Doc. No. 46, 59th Cong., 1st sess., p. 18.)

Naturalization under our Constitution is in all sub-stantial respects like a patent for land or for an inven-tion—an act of grace on the part of the Government, conditioned upon compliance with certain express re-quirements.   In neither the one case not the other can fraud or misrepresentation as to the existence of the requisite conditions give the grantee an indefeasible right to the grant as against the Government.   See *Wallace* v. *Adams*, 204 U. S. 415.

The contention that § 15 of the act of June 29, 1906, is an *ex post facto* law hardly merits serious consideration.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a proceeding under § 15 of the act of June 29, 1906, c. 3592, 34 Stat. 596, 601, instituted by the district attorney of the United States for the Northern District of California, to cancel a certificate of citizenship, granted to the appellant by a state court long prior to the passage of the act referred to, on the ground that it had been fraudulently and illegally procured.   The case was heard upon demurrer to an amended petition, which demurrer was overruled; and thereupon, no answer being filed, the court proceeded to make a decree setting aside and can-celing the certificate.   The appellant brings that decree here for review.

The facts, as set forth in the amended petition and ad-mitted by the demurrer, are as follows: Johannessen, the appellant, is a native of Norway, and arrived in the United States for the first time in the month of Decem-ber, 1888.   Less than four years thereafter, and on Octo-ber 6, 1892, he applied to the Superior Court of Jefferson County, in the State of Washington, under § 2165 of the Revised Statutes of the United States, to be admitted to

citizenship, and procured from that court a certificate admitting him to such citizenship. This certificate was based upon the perjured testimony of two witnesses, to the effect that Johannessen had resided within the limits and under the jurisdiction of the United States for five years at least then last past. The facts were not discovered by the Government until June 29, 1908, when Johannessen made a voluntary statement to the Department of Justice in the form of an affidavit, which is made a part of the amended petition, and wherein he admits that the certificate of citizenship was illegally procured, in that he had not been a resident of the United States for five years at the time it was issued.

The petition contains all necessary averments to show the jurisdiction of the District Court over the present action, leaving only the merits in controversy.

The provisions of law in force at the time Johannessen thus applied for and procured admission to citizenship are contained in §§ 2165 and 2170 of the Revised Statutes, which, so far as pertinent, are as follows:

"SEC. 2165. An alien may be admitted to become a citizen of the United States in the following manner, and not otherwise:

"First. He shall declare on oath, before a circuit or district court of the United States, or a district or supreme court of the Territories, or a court of record of any of the States having common-law jurisdiction, and a seal and clerk, two years, at least, prior to his admission, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and, particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject.

"Second. He shall, at the time of his application to be admitted, declare, on oath, before some one of the

courts above specified, that he will support the Constitution of the United States, and that he absolutely and entirely renounces and abjures all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty; and, particularly, by name, to the prince, potentate, state, or sovereignty of which he was before a citizen or subject; which proceedings shall be recorded by the clerk of the court.

"Third. It shall be made to appear to the satisfaction of the court admitting such alien that he has resided within the United States five years at least, and within the State or Territory where such court is at the time held, one year at least; and that during that time he has behaved as a man of a good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same; but the oath of the applicant shall in no case be allowed to prove his residence."

*     *     *     *     *     *     *     *

"Sec. 2170. No alien shall be admitted to become a citizen who has not for the continued term of five years next preceding his admission resided within the United States."

The act of June 29, 1906, contains a revision of the naturalization laws, together with some additional provisions, among which are the following:

"Sec. 15. That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of

citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

\*      \*      \*      .\*      \*      \*      \*      \*

"Whenever any certificate of citizenship shall be set aside or canceled, as herein provided, the court in which such judgment or decree is rendered shall make an order canceling such certificate of citizenship and shall send a certified copy of such order to the Bureau of Immigration and Naturalization; and in case such certificate was not originally issued by the court making such order it shall direct the clerk of the court to transmit a copy of such order and judgment to the court out of which such certificate of citizenship shall have been originally issued. And it shall thereupon be the duty of the clerk of the court receiving such certified copy of the order and judgment of the court to enter the same of record and to cancel such original certificate of citizenship upon the records and to notify the Bureau of Immigration and Naturalization of such cancellation.

"The provisions of this section shall apply not only to certificates of citizenship issued under the provisions of this Act, but to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws."

The principal contentions in the argument for appellant are, that a decree of naturalization is a judgment of a competent court and subject to all the rules of law regarding judgments as such; that a court of equity could not, prior to June 29, 1906, set aside or annul such a judgment

for fraud intrinsic the record, that is, founded upon perjured testimony, or any matter which was actually presented and considered in giving the judgment; and that if the act of June 29, 1906, authorizes the impeachment of the preëxisting judgment of a coördinate court for fraud consisting of the introduction of relevant perjured testimony, it is unconstitutional as an exercise of judicial power by the legislature.

It was long ago held in this court, in a case arising upon the early acts of Congress which submitted to courts of record the right of aliens to admission as citizens, that the judgment of such a court upon the question was, like every other judgment, complete evidence of its own validity. *Spratt* v. *Spratt*, 4 Pet. 393, 408. This decision, however, goes no further than to establish the immunity of such a judgment from collateral attack. See also *Campbell* v. *Gordon*, 6 Cranch, 176.

It does not follow that Congress may not authorize a direct attack upon certificates of citizenship in an independent proceeding such as is authorized by § 15 of the act of 1906. Appellant's contention involves the notion that because the naturalization proceedings result in a judgment, the United States is for all purposes concluded thereby, even in the case of fraud or illegality for which the applicant for naturalization is responsible. This question may be first disposed of.

The Constitution, Art. I, § 8, gives to Congress power "to establish an uniform Rule of Naturalization." Pursuant to this authority it was enacted, as above quoted from the Revised Statutes, that an alien might be admitted to citizenship "in the following manner and not otherwise"; § 2165 requiring proof of residence within the United States for five years at least; and § 2170 declaring a continued term of five years' residence next preceding his admission to be essential. An examination of this legislation makes it plain that while a proceeding

for the naturalization of an alien is in a certain sense a judicial proceeding, being conducted in a court of record and made a matter of record therein, yet it is not in any sense an adversary proceeding. It is the alien who applies to be admitted, who makes the necessary declaration and adduces the requisite proofs, and who renounces and abjures his foreign allegiance, all as conditions precedent to his admission to citizenship of the United States. He seeks political rights to which he is not entitled except on compliance with the requirements of the act. But he is not required to make the Government a party nor to give any notice to its representatives.

The act of June 29, 1906, in § 11 (34 Stat. 599), declares that the United States shall have the right to appear in naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of his petition, and shall have the right to call witnesses, produce evidence, and be heard in opposition to the granting of naturalization. No such provision was contained in the act as it formerly stood. For present purposes we assume, however, that the Government had such an interest as entitled it, even without express enactment, to raise an issue upon an alien's application for admission to the privileges of citizenship. What may be the effect of a judgment allowing naturalization in a case where the Government has appeared and litigated the matter does not now concern us. (See 2 Black, Judgts., § 534, a.) What we have to say relates to such a case as is presented by the present record, which is the ordinary case of an alien appearing before one of the courts designated by law for the purpose, and, without notice to the Government and without opportunity, to say nothing of duty, on the part of the Government to appear, submitting his application for naturalization with *ex parte* proofs in support thereof, and thus procuring a certificate of citizenship. In view of the great numbers of aliens thus

applying at irregular times in the various courts of record
of the several States and in the Federal Circuit and Dis-
trict Courts throughout the Union, and bringing their
applications on to summary hearing without previous
notice to the Government of the United States or to the
public, it is of course impossible that the public interests
should be adequately represented, and in our opinion the
sections quoted from the Revised Statutes are not open to
any construction that would give a conclusive effect to
such an investigation when conducted at the instance of
and controlled by the interested individual alone.

The foundation of the doctrine of *res judicata*, or es-
toppel by judgment, is that both parties have had their
day in court. 2 Black, Judgts., §§ 500, 504. The general
principle was clearly expressed by Mr. Justice Harlan,
speaking for this court in *Southern Pacific R. Co.* v. *United
States*, 168 U. S. 1, 48:

"That a right, question or fact distinctly put in issue
and directly determined by a court of competent jurisdic-
tion, as a ground of recovery, cannot be disputed in a sub-
sequent suit between the same parties or their privies."

Sound reason, as we think, constrains us to deny to a
certificate of naturalization, procured *ex parte* in the or-
dinary way, any conclusive effect as against the public.
Such a certificate, including the "judgment" upon which
it is based, is in its essence an instrument granting political
privileges, and open like other public grants to be revoked
if and when it shall be found to have been unlawfully or
fraudulently procured. It is in this respect closely anal-
ogous to a public grant of land (Rev. Stat., § 2289, etc.),
or of the exclusive right to make, use and vend a new and
useful invention (Rev. Stat., § 4883, etc.).

Judicial review of letters patent, looking to their can-
cellation when issued unlawfully or through mistake or
when procured by fraud, is very ancient—possibly ante-
dating the establishment of the court of equity in England.

3 Black. Com. 47, 48.   As pointed out by Mr. Justice Grier, speaking for this court in *United States* v. *Stone,* 2 Wall. 525, 535; the original mode was by writ of *scire facias,* the bill in equity being afterwards adopted as a more convenient remedy. In *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273, 281; previous cases were reviewed and the practice discussed: In *United States* v. *Beebe,* 127 U. S. 338, 342; Mr. Justice Lamar, speaking for this court, said: "It may now be accepted as settled that the United States can properly proceed by bill in equity to have a judicial decree of nullity- and an order of cancellation of a patent issued in mistake or obtained by fraud, where the Government has a direct interest, or is under an obligation respecting the relief invoked."   See also *Noble* v. *Union River Logging R. R. Co.,* 147 U. S. 165, 175, and cases cited.

*United States* v. *Throckmorton,* 98 U. S. 61, is not opposed in principle, for, as pointed out in *United States* v. *Minor,* 114 U. S. 233, 241, the patent was issued on the confirmation of a Mexican grant after judicial proceedings, where there were pleadings and parties, and witnesses were examined on both sides, with the right to appeal. *Vance* v. *Burbank,* 101 U. S. 514, 519, was likewise a contested case in the Land Department, as the report shows.

The doctrine that a patent issued *ex parte* may be annulled for fraud has been repeatedly applied to patents for inventions.   *United States* v. *Bell Telephone Co.,* 128 U. S. 315; 361; *Same* v. *Same,* 167 U. S. 224, 238.

Whether the judicial review of a certificate of naturalization should be conducted in one mode or another is a matter plainly resting in legislative discretion.   Section 15 of the act of June 29, 1906 (34 Stat. 601), provides for a proceeding in a "court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit," upon fair

notice to the party holding the certificate of citizenship that is under attack. No criticism is made of this mode of procedure.

The views above expressed render it unnecessary for us to go into the question whether on general principles and without express legislative authority, a court of equity, at the instance of the Government, might set aside a certificate of citizenship or restrain its use, for fraud or the like. In *United States* v. *Norsch*, 42 Fed. Rep. 417, it was declared that the Government could sue in a Federal court for the cancellation of a certificate that had been procured by fraud in a state court, but it was held that the facts set forth in the bill did not make out a sufficient case of fraud. In *United States* v. *Gleason*, 78 Fed. Rep. 396, 90 Fed. Rep. 778, the contrary conclusion was reached upon the main question. These two cases arose prior to the act of 1906.

Since the passage of that act, the district courts have quite generally sustained the action for a cancellation of fraudulent certificates. *United States* v. *Nisbet*, 168 Fed. Rep. 1005; *United States* v. *Simon*, 170 Fed. Rep. 680; *United States* v. *Mansour*, 170 Fed. Rep. 671; *United States* v. *Meyer*, 170 Fed. Rep. 983; *United States* v. *Luria*, 184 Fed. Rep. 643; *United States* v. *Spohrer*, 175 Fed. Rep. 440. In the latter case Judge Cross used the following pertinent language (at p. 442): "An alien friend is offered under certain conditions the privilege of citizenship. He may accept the offer and become a citizen upon compliance with the prescribed conditions, but not otherwise. His claim is of favor, not of right. He can only become a citizen upon and after a strict compliance with the acts of Congress. An applicant for this high privilege is bound, therefore, to conform to the terms upon which alone the right he seeks can be conferred. It is his province, and he is bound, to see that the jurisdictional facts upon which the grant is predicated actually exist, and if they do not

he takes nothing by his paper grant. Fraud cannot be substituted for facts." And again, at p. 446: "That the government, especially when thereunto authorized by Congress, has the right to recall whatever of property has been taken from it by fraud, is, in my judgment, well settled, and, if that be true of property, then by analogy and with greater reason it would seem to be true where it has conferred a privilege in answer to the prayer of an *ex parte* petitioner."

The contention that the act of June 29, 1906, in authorizing the impeachment of certificates of naturalization theretofore issued for fraud consisting of the introduction of perjured testimony, is unconstitutional as an exercise of judicial power by the legislative department, is in effect disposed of by what has been said. The act does not purport to deprive a litigant of the fruits of a successful controversy in the courts; for, as already shown, the proceedings for naturalization are not in any proper sense adversary proceedings, but are *ex parte* and conducted by the applicant for his own benefit. The act in effect provides for a new form of judicial review of a question that is in form, but not in substance, concluded by the previous record; and under conditions affording to the party whose rights are brought into question full opportunity to be heard. Retrospective acts of this character have often been held not to be an assumption by the legislative department of judicial powers. *Sampeyreac* v. *United States*, 7 Pet. 222, 239; *Freeborn* v. *Smith*, 2 Wall. 160, 175; *Garrison* v. *New York*, 21 Wall. 196, 202; *Freeland* v. *Williams*, 131 U. S. 405, 413; *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 478.

An alien has no moral nor constitutional right to retain the privileges of citizenship if, by false evidence or the like, an imposition has been practiced upon the court, without which the certificate of citizenship could not and would not have been issued. As was well said by

Chief Justice Parker in *Foster* v. *Essex Bank*, 16 Massachusetts, 245, 273, "there is no such thing as a vested right to do wrong."

The remaining points taken by the appellant may be briefly disposed of. One is that the provisions of § 15 of the act of 1906 are not retrospective.. This is refuted by a reading of the closing paragraph of the section. Finally it is insisted that, if retrospective in form, the section is void, as an *ex post facto* law within the prohibition of Art. I, § 9 of the Constitution. It is, however, settled that this prohibition is confined to laws respecting criminal punishments, and has no relation to retrospective legislation of any other description. Cooley's Const. Lim. (6th ed.), 319; *Calder* v. *Bull*, 3 Dall. 386, 390; and Rose's Note thereon. The act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges. We do not question that an act of legislation having the effect to deprive a citizen of his right to vote because of something in his past conduct which was not an offense at the time it was committed would be void as an *ex post facto* law. *Cummings* v. *Missouri*, 4 Wall. 277, 321; *Ex parte Garland*, 4 Wall. 333, 378. But the act under consideration inflicts no such punishment, nor any punishment, upon a lawful citizen. It merely provides that, on good cause shown, the question whether one who claims the privileges of citizenship under the certificate of a court has procured that certificate through fraud or other illegal contrivance, shall be examined and determined in orderly judicial proceedings. The act makes nothing fraudulent or unlawful that was honest and lawful when it was done. It imposes no new penalty upon the wrongdoer. But if, after fair hearing, it is judicially determined that by wrongful conduct he has obtained a title to citizenship, the act provides that he shall be deprived of a privilege that was never right-

fully his.   Such a statute is not to be deemed an *ex post facto* law.

The decree under review should be

*Affirmed.*