UNITED STATES v. LELES.

(District Court, N. D. California, Second Division. September 30, 1916.)

No. 180.

1. ALIENS ⊚⟷62—NATURALIZATION—RIGHT TO ADMISSION TO CITIZENSHIP—"GOOD MORAL CHARACTER."

Under Naturalization Act June 29, 1906, c. 3592, § 4, subd. 4, 34 Stat. 597 (Comp. St. 1913, § 4352), requiring the proof to show to the satisfaction of the court admitting the alien to citizenship that he had five years previous to his application resided continuously within the United States, and that during such time he had behaved as a man of good moral

character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same, an alien applying for naturalization, who had been conducting an immoral resort, a sort of combination saloon and rooming house, frequented to his knowledge by immoral characters, is not entitled to citizenship, for the act not only requires that the alien personally conduct himself as a person of good moral character, but that he be such in fact.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 123–125; Dec. Dig. ☞62.

For other definitions, see Words and Phrases, First and Second Series. Good Moral Character.]

2. ALIENS ☞68—NATURALIZATION—DEPOSITIONS.

Under Naturalization Act June 29, 1906, § 9 (section 4368), declaring that every final hearing upon a petition for naturalization shall be had in open court before a judge or judges thereof, and that upon final hearing the applicant and witnesses shall be examined under oath before the court, a state court, hearing a petition for naturalization, cannot appoint its stenographer a commissioner to take the depositions of absent witnesses as to the applicant's good character; the proceeding not falling within the exception of section 10.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

3. ALIENS ☞68—NATURALIZATION PROCEEDINGS—CURE OF ERROR.

In such case, the fact that the judge of the state court granting the certificate of naturalization testified that his finding as to the applicant's good moral character was not affected by depositions of witnesses taken out of court would not cure the error.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

4. ALIENS ☞68—NATURALIZATION—CHARACTER OF PROCEEDINGS—RES JUDICATA.

Though an agent of the Naturalization Bureau was present at a hearing on a petition for naturalization, and as authorized by Naturalization Act June 29, 1906, § 11 (section 4370) participated in the interrogation of the witnesses, the proceeding was not adversary, and the government did not have its day in court, precluding it from subsequently attacking the certificate of naturalization on the ground that it was secured by fraud and issued in violation of the act, for the foundation of the doctrine of res judicata, or estoppel by judgment, is that both parties have had their day in court, and the mere appearance of an administrative officer would not bind the government.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ☞68.]

In Equity. Suit by the United States against John Leles to cancel and set aside a certificate of naturalization. Decree for the United States.

John W. Preston, U. S. Atty., and Ed. F. Jared, Asst. U. S. Atty., both of San Francisco, Cal.

Frank A. Duryea, of San Francisco, Cal., for defendant.

VAN FLEET, District Judge. This is a suit brought by the United States attorney in pursuance of section 15 of the Naturalization Act of 1906 (34 Stats. at L. p. 596, c. 3592) to cancel and set aside a certificate of naturalization issued to the defendant on November 5, 1914, both on the ground of fraud in its procurement, in that defendant

was not at the time of good moral character, and that it was illegally granted, in that the method of proof followed in the state court issuing the certificate was in violation, of the requirements of the act. On a motion to dismiss, the sufficiency of the bill was heretofore sustained. (D. C.) 227 Fed. 189. On the facts, the evidence has left no doubt on the mind of the court that, as to both grounds, it is sufficient to sustain the averments of the bill, if the validity of the proceedings of the state court be open to attack in this form.

[1] As to the charge of fraud, the evidence strongly preponderates in favor of the government's claim that for some time prior to his admission to citizenship the defendant had been conducting a place of bad repute in the community, a sort of combination saloon, restaurant, and lodging or rooming resort, some of the rooms being situated over the saloon and restaurant, and others in adjacent cottages in the rear; that the place was frequented by people of bad repute, both men and women, for evil and illicit purposes; and that the defendant himself was fully aware of the bad character of his resort and the class of people frequenting it. One of the essential qualifications for admission to citizenship is that the applicant shall be a man of good moral character. This must not only be alleged, but proved, before a certificate may be granted. The second subdivision of section 4 of the act requires the petition for admission to state "every fact material to his naturalization and required to be proved upon the final hearing of his application," and the fourth subdivision of the section provides:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same."

This means, not only that the applicant has in his personal habits and pursuits conducted himself as a man of good moral character, but that he shall, so far as the evidence shows, have been such in fact, since a man may not be said in any just sense to be "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same," unless he be a man of that character. If he does not at the time possess that qualification, but by his evidence and that of his witnesses has induced the court admitting him to believe that he does, then he is guilty of a fraud such as to warrant the cancellation of his certificate. United States v. Raverat (D. C.) 222 Fed. 1018.

[2] As to the charge that the proceedings for defendant's naturalization were conducted in a manner violative of the act and the certificate thereby procured to be illegally issued, it appears without controversy that on the final hearing, after examining in open court certain witnesses produced by the defendant as to his good character, the court appointed its stenographer as commissioner to take the depositions or evidence of certain other witnesses on the subject not then present, but residing in a neighboring town in the county, which

was accordingly done, and the evidence thus taken out of court, and out of the presence of the judge, was thereafter reported to and considered by the court before awarding the certificate in question. Section 9 of the act provides:

"That every final hearing upon such petition shall be had in open court before a judge or judges thereof, and every final order which may be made upon such petition shall be under the hand of the court and entered in full upon a record kept for that purpose, and upon such final hearing of such petition the applicant and witnesses shall be examined under oath before the court and in the presence of the court."

The only provision for taking evidence by deposition in such proceedings is found in section 10, which has no relation to the circumstances of this case. The method pursued was therefore directly in contravention of the requirements of the statute; and a like departure was held in United States v. Nisbet (D. C.) 168 Fed. 1006, to be fatal to the validity of the proceedings and the certificate issued in pursuance thereof.

[3] It is true that the judge granting the certificate was called as a witness for defendant at the trial, and testified in substance that his finding as to the fact of defendant's good character was not affected by the depositions of the witnesses taken out of court; that there was sufficient evidence on the question without their aid. But, assuming as we do the perfect truth of these statements, obviously, the opinion or declaration of the judge that his mind was unaffected by the evidence illegally taken and considered cannot cure the vice or defect, any more than could the certificate or declaration of a trial judge, in a bill of exceptions, that evidence admitted or excluded under objection did not affect the result, be held to cure an otherwise erroneous ruling. The purpose of the statute is to prevent such methods, and its requirements are mandatory. United States v. Kolodner (D. C.) 199 Fed. 809; United States v. Nisbet, supra. As stated by Judge Hanford in the latter case:

"The manifest intention of Congress, in the enactment of the naturalization law of 1906, was to prescribe rigid rules to be observed by the courts in naturalization proceedings and to correct the abuse of laxity in such proceedings. Therefore a court may not, in the exercise of assumed discretionary power, admit an alien to citizenship who has failed to establish his right by the kind of evidence which the statute demands."

And as to the degree of strictness, generally, with which the provisions of the act must be followed as the basis for the issuance of a legal certificate, see U. S. v. Simon (C. C.) 170 Fed. 680, U. S. v. Meyer (D. C.) 170 Fed. 983, and U. S. v. Plaistow (D. C.) 189 Fed. 1006.

[4] It appears that an agent of the Naturalization Bureau was present at the hearing and participated in the interrogation of the witnesses, as authorized by section 11 of the act, and defendant now renews his point, made upon his motion to dismiss, that proceedings under the present statute are thus made adversary proceedings; that, being such, the determination of the court awarding the certificate becomes res judicata, and not open to review other than on appeal; that, while the grounds assigned are such as might involve error or

irregularity, they do not affect the jurisdiction of the court and cannot be made the basis of a collateral attack upon the validity of the certificate. In response to this contention it was said in the opinion overruling the motion to dismiss (227 Fed. 192):

"But these contentions are fully met and negatived by the principles announced in Johannessen v. U. S., 225 U. S. 227 [32 Sup. Ct. 613, 56 L. Ed. 1066], where it is held that an adjudication like that here involved, while in some respects partaking of the nature of a judgment, 'is in its essence an instrument granting political privileges, and open, like other public grants, to be revoked if and when it shall be found to be unlawfully or fraudulently procured,' and that 'the act in effect provides for a new form of judicial review of a question that is in form, but not in substance, concluded by the previous record, and under conditions affording to the party whose rights are brought into question full opportunity to be heard,' and it is held that the act is, in this respect, a proper exertion of the legislative will."

But it is urged that in the Johannessen Case the certificate was issued under the old statute, and the court expressly refrained from determining whether proceedings under the present act, of which this is one, are to be regarded as equally of an ex parte character as those under the old, where the proceeding was had without notice to the government. The reasoning of the court in that case, however, would seem to lend countenance to the contention of the government that the mere appearance at the hearing of the agent of the Naturalization Bureau to interrogate the witnesses, without filing any pleading making specific objection to the granting of a certificate or putting in issue any of the averments of the petition, cannot have the effect of converting the proceeding from an ex parte to an adversary one, in a sense to make the doctrine of res judicata apply. Speaking of that doctrine the court say (225 U. S. 238, 32 Sup. Ct. 615, 56 L. Ed. 1066):

"The foundation of the doctrine of res judicata, or estoppel by judgment, is that both parties have had their day in court. 2 Black, Judgts. §§ 500, 504. The general principle was clearly expressed by Mr. Justice Harlan, speaking for this court in Southern Pacific R. Co. v. United States, 168 U. S. 1, 48 [18 Sup. Ct. 18, 27 (42 L. Ed. 355)]: 'That a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.'"

Within this definition the presence of an agent of the Bureau of Naturalization, a mere administrative officer, should not be regarded as an "appearance" for the purpose of litigating the matter in a sense to make it an adversary proceeding. The agent is present, and is usually, as in this instance, permitted to interrogate the applicant and his witnesses; but, aside from this, the proceeding is no more in its nature an adversary one or less ex parte than under the old act. The government is not present as an adversary, but simply for the purpose of supervising the proceedings through the medium of its Naturalization Bureau. What the effect would be of a formal appearance by the law officers of the government, putting in issue the averments of the petition and calling adverse witnesses in support thereof, need not be determined.

These views find support in recent cases arising under the present act. U. S. v. Albertini (D. C.) 206 Fed. 133; U. S. v. Mulvey (filed April 18, 1916) 232 Fed. 513, —— C. C. A. ——. In the former case, where an agent of the Naturalization Bureau had, as here, appeared on the final hearing and the present objection was urged as the result, Judge Bourquin, speaking of the attitude of the government and the purpose of such an appearance, says:

"The government is friendly, and not adversary. There is no opposition, no contest, in the true sense of the word. In theory and form the proceedings may be in their nature adversary; but in practice and substance there is no adversary, and from that standpoint they are still ex parte."

And he adds:

"The design is to enable the government to exercise some supervision over the proceedings, some watchfulness, and in its discretion to oppose, contest, and convert the proceedings into those actually adversary."

And in the Mulvey Case, where a representative of the Naturalization Bureau appeared at the final hearing and took part in the proceedings, it is said by the Circuit Court of Appeals of the Second Circuit:

"It does not affirmatively appear in this record that any law officer of the government was heard in opposition in the proceeding originally had before the District Court, or that he was present or took any part in the proceedings. All that is disclosed is that some one connected with the Bureau of Naturalization was present and was heard in opposition. The representative of the Bureau was not the attorney for the government in the district in which the proceeding took place, and he was not even an attorney. His appearance at such hearings is as amicus curiæ, to present to the court such facts relative to the personal history of the several applicants as the Bureau's investigations may have disclosed. The order admitting the respondent to citizenship recites no appearance by the government on the hearing. No minutes of the testimony were taken, and no record preserved. Under such circumstances we do not think that the appearance of a representative of the Bureau in the proceedings is to be regarded as an appearance by the United States in the technical sense in which that word is used in judicial proceedings. The United States, therefore, is not so bound by the decree that it is not entitled to proceed by petition to cancel the certificate so issued."

These considerations are, I think, sufficient to show that the government should not be held to be estopped by the judgment or order granting the certificate from attacking its validity in this form, and that upon the facts disclosed it is entitled to a decree annulling and setting aside such certificate.

A decree may be entered accordingly.