## UNITED STATES v. ALI.

(District Court, E. D. Michigan, S. D.
August 3, 1925.)

No. 614.

**1. Aliens ⊚⟹71½—Objection to amendment of petition to cancel certificate of citizenship overruled, in view of evidence.**

Objections of indefiniteness and insufficiency of form to amendment to petition to cancel certificate of citizenship will be regarded as formal and technical, and be overruled, where, on hearing, no uncertainty, confusion, or surprise has resulted, especially in view of federal equity rule 19, requiring error or defect in proceeding not affecting substantial rights to be disregarded.

**2. Aliens ⊚⟹71½—Granting certificate of citizenship not res judicata of right.**

Granting of certificate of citizenship in naturalization proceeding is not conclusive, and res judicata of right to citizenship, so as to prevent it being questioned in proceeding to cancel certificate; naturalization proceeding not being a judicial adversary proceeding.

**3. Aliens ⊚⟹71½—No statute of limitation for proceeding to cancel certificate of citizenship.**

There is no applicable statute of limitations for proceeding to cancel certificate of citizenship.

**4. United States ⊚⟹133—Laches not applicable against government.**

Doctrine of laches does not apply against government, suing in its capacity as sovereign, and asserting governmental rights.

**5. Aliens ⊚⟹71½—When certificate of citizenship "illegally procured," relative to cancellation.**

A certificate of citizenship is "illegally procured," within Naturalization Act June 29, 1906, § 15 (Comp. St. § 4374), providing for proceeding to cancel it, when prescribed qualifications for citizenship have no existence in fact, though there is no deliberately wrongful imposition on the court.

**6. Constitutional law ⊜⇒92—No deprivation of vested right by statute for cancellation of certificate of citizenship illegally procured.**

Naturalization Act June 29, 1906, § 15 (Comp. St. § 4374), providing for cancellation of certificate illegally procured, deprives the one to whom it was granted of no vested rights; the certificate conferring no legal rights as against the government.

**7. Aliens ⊜⇒61—High-caste Hindu or Arabian not "white person," within Naturalization Law.**

A high-caste Hindu or an Arabian is not a "white person," within Rev. St. § 2169 (Comp. St. § 4358), as to naturalization.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, White Person.]

In Equity. Suit by the United States against John Mohammad Ali, to cancel certificate of naturalization. Certificate canceled.

Delos G. Smith, U. S. Atty., and Wallace Visscher, Asst. U. S. Atty., both of Detroit, Mich.

Humphreys Springstun, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This is a suit duly brought by the United States, through the United States attorney for this district, for the cancellation of a certificate of citizenship pursuant to section 15 of the Naturalization Act (Act Cong. June 29, 1906, c. 3592, 34 Statutes at Large, 601, being section 4374 of West's United States Compiled Statutes). That section contains the following provision:

"It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

The petition by which the suit was instituted alleges in proper detail that the defendant herein, John Mohammad Ali, on May 26, 1921, received a certificate of citizenship issued to him by this court; that at the time when said certificate was so issued said defendant was not a free white person nor a person of African nativity or descent; and that, therefore, said certificate was illegally procured within the meaning of section 15 of the Naturalization Act (hereinbefore cited). The petition prays that said certificate of citizenship be set aside and canceled by this court.

The petition further recites that it is based on the affidavit of one Martin J. Kilsdonk, a United States naturalization examiner. This affidavit, which was signed and sworn to before the filing of said petition, and was filed herein after the filing of said petition, describes and refers to the naturalization proceedings which resulted in the issuance of the aforesaid certificate of citizenship, and alleges in substance that said defendant was born in Karputhala, in the province of Punjab, India, on January 10, 1875, arrived in the United States on June 2, 1900, and has resided in the state of Michigan, in this district, since April 1, 1911; that when the said certificate was issued to him he was not a free white person nor a person of African nativity or descent; that such certificate was illegally procured, within the meaning of section 15 of the Naturalization Act, as decided by the United States Supreme Court in the case of United States v. Bhagat Singh Thind, 261 U. S. 204, 43 S. Ct. 338, 67 L. Ed. 616, on February 19, 1923; and that, therefore, good and sufficient grounds exist for the cancellation of said certificate.

After the filing of the petition the plaintiff filed a so-called amendment to said petition, alleging that the defendant is a native of Punjab, India, and "is either a Hindu or an Arabian," and that, "whether said defendant be a Hindu or an Arabian, he is not a free white person, nor an alien of African nativity, nor a person of African descent, within the meaning of section 2169, Revised Statutes of the United States." The defendant has moved to strike said amendment from the files as indefinite and insufficient.

The defendant, by answer and motion to dismiss, denies that plaintiff is entitled to a cancellation of his certificate of citizenship, and prays a dismissal of the petition on various grounds, which will be hereinafter considered.

[1] 1. At a hearing in open court evidence was produced by both parties in support of their respective contentions, and by such evidence and by the briefs subsequently submitted such contentions have been fully presented and developed, and it is not now claimed by either party that any of the allegations in any of the pleadings have resulted in present uncertainty, confusion, or surprise. The objections, therefore, made by

the defendant to the sufficiency of the form and manner of pleading by the plaintiff in certain minor respects, must now be regarded as purely formal and technical, and are overruled, especially in view of the provision of federal equity rule 19 that "the court, at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the party." It should, however, be pointed out that the form of the amendment to the petition mentioned is not to be commended, as it does not show what particular language of such petition is sought to be amended, nor indicate the place or part of such petition where the so-called amendatory words are sought to be inserted. It would also have been better practice to file the affidavit, or a copy thereof, on which the petition was based, as a part of the petition.

[2] 2. It is urged on behalf of the defendant that the question whether he is entitled to citizenship was conclusively decided in his favor by the action of this court in granting him his certificate of citizenship in the naturalization proceedings already referred to, and that such question is therefore res judicata, and cannot be raised by the government in the present proceeding. This contention cannot be sustained. It is now settled law that the statutory naturalization proceeding by which an alien seeks the privilege of citizenship is not a judicial adversary proceeding in any true legal sense, and that an order directing the issuance of a certificate of citizenship in such naturalization proceeding is, in essence, not a judgment rendered by a court in a pending suit between adverse parties, and as such final and binding upon said parties as to all matters involved in the suit and decided by the judgment, but is merely a grant, in special proceedings authorized by Congress, of a political privilege conferred by the government upon the petitioning alien purely as a gratuity, and subject to whatever terms and conditions Congress may impose therein, including the right of the government to insist upon a cancellation of such certificate, if found to have been illegally procured. Johannessen v. United States, 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066; United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321.

[3, 4] 3. The contention of the defendant that the right of the government to maintain this suit is barred by lapse of time is equally without merit. It is not, and cannot be, claimed that there is any applicable statute of limitation; and it is elementary that the doctrine of laches does not apply as against the government, when suing in its capacity as a sovereign and asserting governmental rights. Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 39 S. Ct. 407, 63 L. Ed. 889.

[5] 4. The defendant further insists that the only grounds on which his certificate of citizenship could be canceled under section 15 of the Naturalization Act (hereinbefore quoted) are that such certificate was obtained by fraud, or that it was illegally procured. To that extent the defendant is correct, and in the present case the sole ground on which the government relies is that the certificate in question was "illegally procured," within the meaning of section 15, in that the defendant did not and does not possess the statutory qualifications necessary for citizenship, and therefore procured said certificate "illegally." The defendant, however, argues that the words "illegally procured," thus used in the statute, refer to a procurement through some unconscionable or unfair conduct, such as subornation of perjury or the employment of similar means, and that the quoted words import the practicing of a deliberately wrongful imposition upon the court, inducing it to order the issuance of the certificate of citizenship involved, and that they are not applicable to a case where, as here, the only illegality claimed is the absence of requisite qualifications for citizenship. The question thus raised has been decided adversely to the contention of the defendant by the Supreme Court in the case of United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853, where it was held that a certificate of citizenship, procured when prescribed qualifications have no existence in fact, is "illegally procured," within the meaning of the statute and may be canceled on that ground. See, also, United States v. Ness, supra.

[6] 5. The considerations already referred to are also applicable to and decisive of the objections by defendant to the effect that the statutory provisions for cancellation of a certificate of citizenship, issued to and relied upon by him, deprives him of vested rights, and constitutes an invalid ex post facto law. The questions whether, and, if so, to what extent and in what manner, the privilege of citizenship shall be bestowed upon aliens, are questions committed to the control of Congress, which has plenary power over the subject. Congress having limited this privilege to a

specified class of persons, no other person is entitled to such privilege, nor to a certificate purporting to grant it, and any such certificate issued to a person not so entitled to receive it must be treated as a mere nullity, which confers no legal rights as against the government, from which it has been obtained without warrant of law. Johannessen v. United States, supra; United States v. Ginsberg, supra; United States v. Ness, supra.

[7] 6. Finally, it is claimed by defendant that he is a free white person, within the meaning of section 2169 of the Revised Statutes, and that therefore his certificate of citizenship cannot be canceled on the ground, urged by the government, that he is not such a person. Section 2169 (Comp. St. § 4358) limits the privilege of citizenship to "free white persons, and to aliens of African nativity and to persons of African descent." As admittedly defendant is "free," and is not "of African nativity or descent," the question involved in this connection is whether he is "white," within the meaning of the statute.

When this court held, in 1921, that the present defendant was, in contemplation of the Naturalization Act, a white person, the clear weight of judicial authority (although the question had not then been decided by the United States Supreme Court) was to the effect that the words "white persons," used in the statute, referred to and included all persons belonging to the so-called Caucasian race (sometimes called the "white race"), as distinguished from members of the races sometimes referred to as the black, brown, red, and yellow races, and that the word "white" was used in its scientific ethnological sense, and that high-caste Hindus belonged to the so-called Caucasian race, and were therefore white persons for the purpose of naturalization. As therefore, the present defendant (then a petitioner for citizenship) was considered and referred to by all parties on the record as a high-caste Hindu, this court directed that said petitioner be admitted to citizenship. Two years afterwards the Supreme Court decided (for the first time, as already noted) that the words "white persons," in the statute, were to be interpreted "in accordance with the understanding of the common man, from whose vocabulary they were taken, and were not to be converted into words of scientific terminology"; that they were words of common speech, and not of scientific origin; that, while such words implied a racial and not an individual test, yet the term "race" must be applied to a group of living persons *now* possessing in common the requisite characteristics, and not to groups of persons descended from some remote, common ancestor; that, while it might be true that "the blonde Scandinavian and the brown Hindu" had a common ancestor "in the dim reaches of antiquity," the average man knows that "there are unmistakable and profound differences between them to-day"; and that the question to be decided was not "whether, by the speculative processes of ethnological reasoning, we may present probability to the scientific mind that they have the same origin, but whether we can satisfy the common understanding that they are now the same, or sufficiently the same, to justify the interpreters of the statute—written in the words of common speech for common understanding, by unscientific men—in classifying them together in the statutory category as white persons." Applying the conclusion thus reached to the alien in that case, a native of India, who was a high-caste Hindu, the court pointed out that, when the statute was first enacted in 1790, immigrants and the descendants of immigrants from Europe constituted the white population of the country; that there was much in the history of the statute to suggest that no Asiatic was therein included; that the action of Congress in amending the Immigration Act in 1917 (Act Feb. 5, 1917, c. 29, § 3, 39 Statutes at Large, 874 [Comp. St. § 4289¼b]), so as to exclude from admission into this country all natives of India, was strongly indicative of its intention to exclude such aliens from citizenship; and that it was a matter of common knowledge that the physical group characteristics of the Hindus render them readily distinguishable from the various groups of persons in this country commonly recognized as white, and that the children of European parentage quickly merge into the mass of our population and lose the distinctive marks of their European origin, while the children born in this country of Hindu parents retain indefinitely the evidence of their ancestry. The court announced that it was "unable to agree with the District Court, or with other lower federal courts, in the conclusion that a native Hindu is eligible for naturalization."

Although the defendant herein was, as already noted, referred to by all parties concerned with his naturalization as a high-caste Hindu, and was admitted to citizenship on that understanding, in which he then appeared to acquiesce, he now claims that the

last-cited decision of the Supreme Court does not apply to him, for the reason that he is not a "Hindu" of full Indian blood, but is an Arabian of full Arabian blood. While admitting that he is a native of India, as his ancestors for several centuries have also been, he contends that originally his ancestors were Arabians, who invaded the territory now known as India, and settled and remained there, but have been careful not to intermarry with "the native stock of India," and have "kept their Arabian blood line clear and pure by intermarriage within the family." I am unable to follow the argument thus sought to be made. No reason has been suggested, and I can discover none, why the mere fact that the early ancestors of the defendant came to India from Arabia, where they had been called Arabians, renders the defendant a white person. His skin is certainly not white, but unmistakably dark, like that of the other members of his race. He is a native of the continent of Asia, specifically of the country of India, and more specifically of the province of Punjab, the place of the nativity of the alien held, in the case of United States v. Bhagat Singh Thind, supra, not to be a white person. Clearly, all of the conclusions of the Supreme Court in that case, as well as the reasons on which they are based, are equally applicable to this defendant. He admits that his ancestry, like that of other races residing in India, originally sprang from Caspian Mediterranean stock. It would seem that the most that could be claimed by him, by reason of Arabian ancestry, would be membership in the Caucasian race. This, however, manifestly would avail him nothing, under this decision of the Supreme Court.

I am clearly of the opinion, and I hold, that the defendant is not a white person, within the meaning of the Naturalization Act, and that therefore his certificate of citizenship was illegally procured, and must be canceled, in accordance with the prayer of the petition of the government, and an order will be entered accordingly.