### UNITED STATES v. ETHERIDGE.

### No. 8555.

District Court, D. Oregon.

May 3, 1930.

---

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or.

Pipes, Pipes & Pipes, of Portland, Or., for defendant.

BEAN, District Judge.

This suit was commenced in March of 1921, but not brought to trial until April 21 of this year. It is brought under section 15 of the Act of Congress of June 29, 1906 (8 USCA § 405), to set aside a certificate of naturalization issued to the defendant by this court in January, 1918, on the ground that he fraudulently concealed from the court facts material on the hearing. It is alleged in the complaint that the defendant, intending to mislead and deceive the court, fraudulently stated in his petition for naturalization that he entered the United States on February 15, 1903, when in truth and fact his entry was on February 20, 1904, and under the name of John Ladbrooke, and not his true name. (2) That prior to his entry he was convicted and sentenced in an English court for forgery. (3) That after his entry and on October 3, 1905, he was convicted in the state of New Jersey for obtaining money under false pretenses, and sentenced to serve eighteen months in prison at hard labor, and on the 22d day of November, 1907, he was

again convicted in that state for a similar offense, and sentenced to two years' imprisonment. It is alleged that these facts were concealed from the court and not known to the officers of the government at the time of the hearing of the application for admission, and not learned by them until long subsequent thereto.

The defendant in his answer admits that he entered the United States under the name of John Ladbrooke on the date alleged by plaintiff, but says that his misstatement of the date of his entry in his application for admission was an inadvertence and not fraudulent. The answer also admits that the defendant was convicted and sentenced in the New Jersey courts as alleged in the complaint. It denies, however, that he was convicted of forgery in England, but alleges that on the date and at the place stated in the complaint he was convicted and sentenced for applying for and obtaining the position of curate in the English Church by fraudulently stating and representing in writing that he was a curate of that church, and supporting such application by fictitious letters prepared by him or his associates recommending him for the position.

In view of the admissions in the answer concerning the proceedings in England, and the other admitted facts, it is deemed unnecessary to consider the objections urged to the admission of the purported record of the English court. That defendant intended to and did deceive the court in reference to his entry into the United States under a fictitious name, and perhaps in an attempt to avoid the effect of section 2 of the Act of Congress of March 3, 1903 (32 Stat. 1214), excluding from admission aliens who have been convicted of crime involving moral turpitude, is evidenced by his misstatement in his application of the date of his entry, and the fact that he intended to conceal from the court his convictions and sentences in the state of New Jersey is manifest by his answers to a questionnaire submitted by the Naturalization Department and answered by him prior to the hearing, in which he stated, among other things, that he had resided in Chicago from February, 1903, to October 1912, when as a matter of fact he was confined in prison in the state of New Jersey during a considerable portion of that time. And in answer to an inquiry whether he had ever been arrested or charged with a violation of any law of the United States or state or city ordinance, he answered, "Yes, once in Pennsylvania in 1915, for speeding with an automobile," and that he paid a fine.

 That the convictions and sentences in the New Jersey courts were for infamous crimes seems clear. Mackin v. U. S., 117 U. S. 348, 6 S. Ct. 777, 29 L. Ed. 909; Ex parte Wilson, 114 U. S. 417, 5 S. Ct. 935, 29 L. Ed. 89; Parkinson v. U. S., 121 U. S. 281, 7 S. Ct. 896, 30 L. Ed. 959; U. S. v. DeWalt, 128 U. S. 393, 9 S. Ct. 111, 32 L. Ed. 485. But it is argued on behalf of the defendant that all the Naturalization Law requires is satisfactory proof by an applicant for admission of his continued residence in the United States and good moral character for the five-year period immediately prior to his application for admission, and that evidence of moral delinquency on his part prior to that time is immaterial. But this position overlooks the fact that an order admitting an alien to naturalization is not made as a matter of course, but is an act of grace. Johannessen v. U. S., 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066. Before an alien can be admitted to citizenship, it must be made to appear to the satisfaction of the court, among other things, that for five years at least preceding his application he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. Section 382, title 8, USCA.

The burden of proof is on the petitioner to establish these facts by relevant and competent testimony. It is incumbent upon him, when requested, to honestly and truthfully disclose the facts bearing on his moral conduct during and before the five-year period, in order that the court may determine whether, taking into account his whole conduct, he has in fact been a man of good moral character during the five-year period. In re Talarico (D. C.) 197 F. 1019; U. S. v. Albertini (D. C.) 206 F. 133, 135; U. S. v. Kichin (D. C.) 276 F. 818, 822. As said by District Judge Faris in U. S. v. Kichin, supra: "The five-year period mentioned in the statute quoted is not a statute of repose, in so far as to preclude a court from going beyond it, in order to ascertain the behavior and antecedent conduct of the petitioner, for the purpose of so far judging the future by the past as to form a conclusion whether benefit or harm would accrue from such petitioner's admission as a citizen. To take any other view of the law would be tantamount to saying that which all the decisions hold cannot be said, namely, that one applying for citizenship does so as a matter of right, and not as an humble petitioner for an act of grace."

The statute does not prescribe the evidence which shall be satisfactory to the court, nor that it be confined to the five-year period. It is the judicial duty of the court, in considering applications for admission to citizenship, to hear and consider all the evidence and to determine therefrom whether, as a whole, it satisfactorily appears that the applicant has behaved as a man of good moral character during the requisite period. It, of course, does not necessarily follow that, because an applicant has been guilty of some moral delinquency prior to the commencement of the five-year period, he should not be admitted; but he should, when requested, disclose the facts so that the court may be fairly advised whether upon the whole evidence it is satisfied that he has in fact been of good moral character during the five-year period. In order to determine that question, the court should be advised of his former conduct and behavior, and if it is intentionally concealed from it by the applicant an order of admission will be vacated and set aside.

So ordered.