### In re BRADLEY.

(Fourth Division.  Fairbanks.  February 16, 1918.)

No. 418.

**1. Aliens ☞68—Citizens—Statutes.**

Petitioner was born in 1859 in Nova Scotia, Canada. His parents died there when he was three years old, and he was taken into the family of one James M. Freeman to reside, and in 1876 came to the United States as a member of the Freeman family. He was never legally adopted by the Freemans, though he continued to reside with them and took their name as his middle name. In 1888 Freeman became a citizen of the United States, and in 1917 petitioner sought to become a citizen of the United States under section 3 of the Act of Congress of June 25. 1910, 36 Stat. 830 (U. S. Comp. St. § 4352), as one who had resided continuously in the United States during a period of five years next preceding May 1, 1910, who, because of misinformation in regard to his citizenship had labored under the impression that he was a citizen of the United States, etc. *Held*, the petitioner was not within the statute, because he knew the facts at all times, and was not misinformed, and was not entitled to be made a citizen of the United States under that clause.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Adoption ⊛1, 17—Evidence.**

Adoption of children was unknown to the common law of England. It exists only by virtue of statutory law. The fact of adoption will never be presumed, but must be affirmatively proved by the person claiming its existence.

R. F. Roth, U. S. Atty., of Fairbanks.

BUNNELL, District Judge. The petition of James Freeman Bradley to become a citizen of the United States was filed in this court on the 30th day of October, 1917, under section 3 of the Act of Congress of June 25, 1910, 36 Statutes at Large, pp. 830, 831 (U. S. Comp. St. § 4352), providing:

"That any person belonging to the class of persons authorized and qualified under existing law to become a citizen of the United States who has resided constantly in the United States during a period of five years next preceding May first, nineteen hundred and ten, who, because of misinformation in regard to his citizenship or the requirements of the law governing the naturalization of citizens has labored and acted under the impression that he was or could become a citizen of the United States and has in good faith exercised the rights or duties of a citizen or intended citizen of the United States because of such wrongful information and belief may, upon making a showing of such facts satisfactory to a court having jurisdiction to issue papers of naturalization to an alien, and the court in its judgment believes that such person has been for a period of more than five years entitled upon proper proceedings to be naturalized as a citizen of the United States, receive from the said court a final certificate of naturalization, and said court may issue such certificate without requiring proof of former declaration by or on the part of such person of their intention to become a citizen of the United States, but such applicant for naturalization shall comply in all other respects with the law relative to the issuance of final papers of naturalization to aliens."

From the evidence it appears that petitioner was born in the town of Kempt, Nova Scotia, Canada, on the 4th of March, 1859. Both parents died before he was three years of age, and by some arrangement concerning which the petitioner is unable to give any definite information he lived with the family of James M. Freeman during almost all of his minority. When he was seventeen years of age the Freeman family emigrated from Nova Scotia to DeKalb county, Mo. It seems that he considered himself an adopted child of Freeman, and he testifies that Freeman had adopted him

⊛See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

.o live with him (Freeman) as his son until he was 21 years of age. The name "Freeman" was given him by Freeman for a middle name, but he retained the name of Bradley for his surname. The evidence shows no legal adoption. Adoption was unknown to the common law of England. It exists only by virtue of statute. 1 Ruling Case Law, p. 593; 1 Corpus Juris, pp. 1371, 1372.

"The fact of adoption will never be presumed, but must be affirmatively proved by the person claiming its existence." 1 Corpus Juris, p. 1394.

The record shows that James M. Freeman became a citizen of the United States in 1888. The petitioner was then 29 years of age. He sets forth in his petition that before he became 21 years of age he was informed by Freeman that he (Freeman) had become a naturalized citizen of the United States, and that because of such misinformation in regard to his citizenship he has labored and acted under the impression that he was a citizen of the United States, and has in good faith exercised the rights or duties of a citizen. The following testimony of the petitioner was given upon cross-examination:

"Q. Did you understand at what age of the son the father would have to be naturalized, so as to make the son a citizen? A. He would have to be naturalized before he was 21 years of age.

"Q. You understood that all the time. A. Yes.

"Q. And you knew it was absolutely impossible for Freeman to become naturalized before you became 21 years of age, did you not? A. I certainly did not.

"Q. He came to the United States when you were 17, and there was only 4 years left. You knew that one could not become naturalized in 4 years, didn't you? A. Yes; I knew it took 5 years.

"Q. Now, he only had 4 years. You came along with him when you were 17. So it would be impossible for him to be naturalized before you were 21. You realize that? A. I certainly understand that he would have to take 5 years to get out his naturalization papers.

"Q. And there was only 4 years for him to do it in before you became 21 years of age. A. I hadn't thought of that.

"Q. You knew that was true. You have known as a matter of common knowledge that a man has to be 5 years in the United States before he can be naturalized. A. Yes.

"Q. You have known that all the time? A. Yes; I have known that all the time.

"Q. And you knew all the time that he couldn't possibly be naturalized before you were 21 years of age, didn't you? A. He certainly couldn't.

"Q. Then how do you say that you thought you were a citizen of the United States by virtue of his naturalization? A. Because he told me so.

"Q. He told you something that you knew couldn't possibly be true. A. I hadn't thought of it in that light."

The evidence also shows that during the last 16 years the petitioner has voted once, in 1908, for Delegate from Alaska, has once registered at the municipal registration for the town of Fairbanks, and has served three times as a juror in the commissioner's court. To the question, "Why haven't you voted since?" (1908); petitioner replied:

"I didn't like the candidate; and, if I was a citizen of the United States, as I supposed I was, that is my privilege. If I want to vote, I use it; if I didn't, why, not."

The petitioner also testified that at the 1917 municipal election, although his wife was a candidate for office, he did not vote at said election.

Under the circumstances, it may be proper to excuse the petitioner for not making some investigation to ascertain what, if any, proceedings were taken to make him an adopted child of James M. Freeman. The fact that he was always called "Bradley" should have put him upon inquiry. But how can one who 37 years ago attained his majority, and has known these many years that Freeman could not have become a citizen during petitioner's minority, now be heard to say that he has relied upon the misinformation given him by his alleged adoptive parent? To inform means to communicate knowledge to, to acquaint, to advise, to instruct, to enlighten; and to misinform means to inform wrongly. He who seeks to become a citizen of the United States without first being required to make a declaration of intention and allowing two years to elapse before making his petition for final papers, must be one—

"who, because of misinformation in regard to his citizenship or the requirements of the law governing the naturalization of citizens, has labored and acted under the impression that he was or could become a citizen of the United States, and has in good faith exercised the rights or duties of a citizen or intended citizen of the United States because of such wrongful information."

In re Mondelli (D. C.) 228 Fed. 920, the petitioner stated:

"That he had not been told by any one in particular that he was a citizen of the United States, but somehow had that impression, because of his arrival at an early age;" also "that he knew his father, who also resides in the United States, was not a citizen, for the reason that he 'did not have his naturalization papers.'"

Referring to section 3 of the Act of June 25, 1910, the court said:

"It is the opinion of the court that an applicant under this section must have received such wrongful information from a source which, in the ordinary course of events, might be considered authentic."

The present case is most remarkable. The petitioner knew that he could not be a citizen of the United States by virtue of his alleged adoptive parent having become a citizen of the United States. If he did not know this to be true at the time he attained his majority, he must have ascertained that fact within a reasonable time thereafter. His testimony leads one to believe that he knew the law all the time, and knew the facts, but, instead of acting upon what he *knew* to be the law, he elected to accept a statement he claims Freeman made to him that Freeman was naturalized, and that therefore the petitioner was a citizen. There can be no relief granted to one who claims to rely upon misinformation, when he admits that he not only knows the misinformation to be in fact such, but also knows of his own knowledge what the facts are.

In U. S. v. Souders, 27 Fed. Cas. 1267, the court said:

"When a man is spoken of as 'exercising a right,' it is commonly understood that he is doing something."

It is not only a citizen's right, but it is his duty, to vote at general and municipal elections and take a reasonably active interest in the administration of public affairs. Duties are not synonymous with privileges. It is the opinion of the court that the petitioner does not belong to that class of persons intended to be admitted to citizenship under the provisions of the Act of June 25, 1910, and the petition is therefore dismissed, without prejudice.