## In re HOBEN.

Third Division.

Dec. 16, 1930.

W. N. Cuddy, U. S. Atty., of Anchorage, for the United States.

HILL, District Judge.

On February 14, 1929, the above-entitled matter came on for hearing and was continued for further hearing. It came up again December 16, 1930.

The applicant was born in Canada in 1876. His parents were not citizens of the United States and never came to the United States. He entered the United States in 1892, and ever since has resided therein. He had very little schooling as a boy, and until he was past majority worked in lumber camps and in the mines. Prior to 1900 he came to Alaska, where he has continuously resided since that time. The proof shows that he is a man of rather unusual intelligence, and has voted, sat on juries, served as mayor of the town of Seward, one of the largest towns in Alaska, and has taken an active part in matters political. He applies for citizenship under the provisions of section 377, title 8, U.S.C.A.

■■ The burden is on the applicant to prove to the satisfaction of the court the facts necessary to entitle him to citizenship. In re Vasicek (D.C.) 771 F. 326. In the language of Mr. Justice Pitney, "He seeks political rights to which he is not entitled except on compliance with the requirements of the act" (Naturalization). Johannessen v. U. S., 225 U.S. 227, 32 S.Ct. 613, 615, 56 L.Ed. 1066. In addition to the proofs ordinarily required of applicants, he must show that he erroneously exercised the rights and performed the duties of a citizen because of misinformation regarding his citizenship status. The misinformation must have come from a source which in the ordinary course of events might be considered authentic. In re Bradley, 6 Alaska, 89; In re Mondelli (D.C.) 228 F. 920. This proof must be to the satisfaction of the court hearing the application.

■ He has proved by the evidence of two reputable witnesses, who have known him intimately for over twenty years past, the ordinary qualifications required of an ap-

plicant for citizenship. There is no doubt of his having exercised the rights and duties of a citizen. The records show that he has served on a jury in this court. He testifies, and it is not disputed, that he has voted a number of times and has held political office in the town of his residence. He testifies that when he reached the age of majority he believed he then became a citizen of the United States because of his having come to the United States during his minority, but, during the winter of 1901–02 while he was in New York attempting to interest certain people in some oil claims he had located in Alaska, a Mr. Alexander and others disabused his mind as to his citizenship and questioned his right to hold oil claims in Alaska. He then went to Exeter, N. H., where he had formerly resided and had friends, and discussed with them his citizenship status, and was by them "taken up to Mr. Eastman, the State's Attorney." With one or two friends and Mr. Eastman, he went to the courthouse, but not before the judge. At that time applicant had not made any declaration of intention, and no witnesses were examined; at least the applicant says they were not brought in before the judge and examined as his witnesses were examined on the present application. Finally he received from Mr. Eastman what applicant thought was a certificate of citizenship. That paper he has lost. In answer to the question, "Did they" (State's Attorney Eastman and the other persons present when applicant received the paper he considered a certificate of citizenship) "tell you that you were a citizen?" the applicant answered, "Yes;" and he says he believed them. His conduct since is entirely consistent with that belief, and I see no such inherent improbability in that belief as to make me question it. It is to be borne in mind that the thing which at that time was agitating him and his advisers and in which they were primarily and acutely interested was his right to locate and hold mining claims in Alaska. It is further to be borne in mind that the people of Exeter probably had comparatively little knowledge of the laws relating to the location of mining claims. Even at this late date and in

the face of Manuel v. Wulff, 152 U.S. 505, 14 S.Ct. 651, 38 L.Ed. 532, and a uniform line of decisions by the Supreme Court of the United States followed by all the other courts of the United States, there are many laymen and some lawyers who believe that before declaration of intention an alien cannot locate a mining claim. However, under the plain wording of the statute (Rev.St. § 2319, 30 U.S.C.A. § 22; § 129, C.L.A., 48 U.S.C.A. § 381), mining claims may be located by those who have declared their intention to become citizens of the United States. I am satisfied in my own mind that the applicant received at Exeter what are commonly known as his first papers. He was qualified to make his declaration of intention; he was in the proper place to make it; and it gave him the rights he wished.

The applicant testifies that in 1901–02 he had given very little thought to citizenship. He had assumed that he was then a citizen. He made no personal investigation of the laws, but depended upon the state's attorney, and was by him misinformed, which, I take it, brings him within the rule above stated as to the source of information. Investigation by the Naturalization Bureau shows that applicant's statements as to his presence in Exeter and as to the names of officials and residents of Exeter are practically correct. But examination of the records at Exeter fails to reveal that any certificate of citizenship was issued to him.

His parents were not citizens of the United States, and applicant was not born in the United States; therefore, in the absence of any record, the presumption is that he is still an alien. The facts he recites preclude the possibility that he became a citizen at the time and in the place he thought he did.

I believe he has sustained the burden placed upon him and is entitled to naturalization.